**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CYPRESSWOOD SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 7:26-cv-00279<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., in which Plaintiff Cypresswood Solutions LLC ("Cypresswood" or "Plaintiff") alleges as follows against Defendant Google LLC ("Google" or "Defendant"):

**INTRODUCTION AND PARTIES**

1. This complaint arises from Google's unlawful infringement of the following United States patents, which relate to certain aspects of cloud computing management, information security, and database storage: U.S. Patent No. 8,090,909 (the "'909 Patent"); U.S. Patent No. 8,219,750 (the "'750 Patent"); U.S. Patent No. 8,239,624 (the "'624 Patent"); and U.S. Patent No. 9,086,821 (the "'821 Patent") (collectively the "Asserted Patents"). Cypresswood owns each of the Asserted Patents and holds all enforcement rights. Cypresswood also has the right to recover all damages for past, present, and future infringement of the Asserted Patents and to seek injunctive relief as appropriate under the law.

2. Plaintiff Cypresswood Solutions LLC is a Texas limited liability company with its principal place of business at 6500 River Pl. Blvd, Building 7, Suite 250, Austin, Texas 78730.

3. The Asserted Patents were developed by Pivot3, Inc. of Austin, Texas.[1] Pivot3 developed "smarter infrastructure for ... software-defined datacenter[s] with an Intelligence Engine to consolidate ... workloads on single infrastructure while prioritizing the applications that power ... business[es]."[2] Pivot3's "hyperconverged software platform overc[ame] the performance, scale and resiliency limitations of conventional ... infrastructure .... Pivot3's innovative, multi-tier architecture ... orchestrated by an Intelligence Engine ... simplifie[d] performance, data protection and security management and put[] an end to infrastructure complexity[,] [allowing users to] .... confidently consolidate a broader set of workloads on a single infrastructure platform and deliver guaranteed performance to the applications that power the business."[3]

4. Pivot3 employed hundreds of engineers, researchers, and others from its offices in Austin, including its founders, CEO, and inventors. In addition, it partnered with various other entities located in this District, such as Dell, EMC, VMware, Cisco, and others, and prosecuted the Asserted Patents using prosecution counsel located in this District.

5. Pivot3's technological advancements were broadly recognized by the market. In 2020, Pivot3 won three awards, for "Most Valuable Product," "Money-Saving Products," and a "Government Security Award."[4] Each of these awards considered "innovation, functionality,

[1] https://www.sec.gov/Archives/edgar/data/1316752/000131675215000004/xslFormDX01/primary_doc.xml

[2] https://web.archive.org/web/20190819145716/https://pivot3.com/product/datacenter/

[3] https://web.archive.org/web/20200517090007/https://pivot3.com/wp-content/uploads/2019/05/Data-Sheet-Pivot3-Acuity-Datacenter-Series_051519.pdf

[4] https://web.archive.org/web/20201030102807/https://pivot3.com/press-release/pivot3-recognized-with-multiple-technology-innovation-awards/; https://web.archive.org/web/20210127123702/https://pivot3.com/press-release/pivot3-virtual-

competitive advantage and ability to provide substantial impact and value to channel partners and customers."[5]

6. Cypresswood was formed to take ownership of and provide access to the fundamental patented technology that emerged from Pivot3's pioneering research in the smart infrastructure and datacenter fields. This technology is integral to today's cloud computing platforms and content storage in datacenters.

7. Cypresswood is the owner of U.S. Patent No. 8,090,909 (the "'909 Patent"), titled "Method and System for Distributed RAID Implementation," which issued on January 3, 2012. A copy of the '909 Patent is attached to this Complaint as Exhibit 1.

8. Cypresswood is the owner of U.S. Patent No. 8,219,750 (the "'750 Patent"), titled "Method and System for Execution of Applications in Conjunction with Distributed RAID," which issued on July 10, 2012. A copy of the '750 Patent is attached to this Complaint as Exhibit 2.

9. Cypresswood is the owner of U.S. Patent No. 8,239,624 (the "'624 Patent"), titled "Method and System for Data Migration in a Distributed RAID Implementation," which issued on August 7, 2012. A copy of the '624 Patent is attached to this Complaint as Exhibit 3.

10. Cypresswood is the owner of U.S. Patent No. 9,086,821 (the "'821 Patent"), titled "Method and System for Execution of Applications in Conjunction With RAID," which issued on July 21, 2015. A copy of the '821 Patent is attached to this Complaint as Exhibit 4.

---

security-operations-center-wins-2020-astors-homeland-security-award-for-best-video-data-storage-solution/; https://web.archive.org/web/20210127130952/https://pivot3.com/press-release/pivot3-wins-2020-campus-safety-best-award/

[5] *Id.*

11. On information and belief, Google LLC is a wholly-owned subsidiary of Alphabet, Inc., and a Delaware limited liability company, with an established place of business at 500 West 2nd Street, Austin, Texas 78701, at which Google can be served with process.

12. Google has long known of Pivot3 and its interrelated distributed RAID patent family, including the Asserted Patents.[6] Google's own patents regarding "Techniques for data storage, access, and maintenance"; "Orthogonal coding for data storage, access, and maintenance"; "Modified orthogonal coding techniques for storing data"; "Skewed orthogonal coding techniques"; and "Storing data across groups of storage nodes" cite Pivot3 and its patent families.[7] Indeed, as detailed below, in 2012 the U.S. Patent and Trademark Office ("PTO") listed Pivot3's patents and a published application as prior art pertinent to one of Google's own distributed-storage patent applications, and Google itself cited the same Pivot3 references to the PTO in at least seven more of its own patent applications. Those Pivot3 references expressly identify, by serial number and title, and incorporate by reference, the applications that issued as the '909 and '624 Patents, and three of them list on their faces PTO actions in the applications that issued as the '909, '624, and '750 Patents. And on information and belief, Google—having knowledge of Pivot3's distributed RAID patent family and having been aware of the published application that issued as the '821 Patent, a continuation in the '750 Patent's family—learned of the '821 Patent upon or shortly after its issuance in July 2015. Despite this knowledge and recognition of their relevance, Google has infringed and continues to infringe Plaintiff's patents.

---

[6] https://patents.google.com/patent/US8090909B2/en?oq=8%2c090%2c909+; https://patents.google.com/patent/US8239624B2/en?oq=8%2c239%2c624+

[7] *Id.*

## GOOGLE'S PRE-SUIT KNOWLEDGE OF THE ASSERTED PATENTS AND ITS INFRINGEMENT

### A. Pivot3's Interrelated Distributed RAID Patent Applications

13. Pivot3's inventors, including William C. Galloway and Ryan A. Callison, developed Pivot3's distributed RAID technology and filed a series of interrelated patent applications directed to it. Mr. Galloway and Mr. Callison are named inventors on each of the Asserted Patents. (Exs. 1–4.)

14. On June 6, 2008, Pivot3 filed six provisional patent applications directed to distributed RAID: U.S. Provisional Application Nos. 61/131,270, 61/131,314, 61/131,291, 61/131,290, 61/131,379, and 61/131,312. And on June 5, 2009, Pivot3 filed a group of non-provisional applications claiming priority to all six of those provisional applications, including: (a) Application No. 12/479,319, titled "Method and System for Distributed RAID Implementation," which issued as the '909 Patent on January 3, 2012; (b) Application No. 12/479,360, titled "Method and System for Data Migration in a Distributed RAID Implementation," which issued as the '624 Patent on August 7, 2012; and (c) Application No. 12/479,434, titled "Method and System for Rebuilding Data in a Distributed RAID System," which issued as U.S. Patent No. 8,082,393 (the "'393 Patent") on December 20, 2011. Application No. 13/224,936, a continuation of Application No. 12/479,434 that claims priority to the same six provisional applications, issued as U.S. Patent No. 8,140,753 (the "'753 Patent") on March 20, 2012. (Exs. 1, 3, 17, 18.)

15. On June 24, 2009, Pivot3 filed Application No. 12/490,810, titled "Method and System for Execution of Applications in Conjunction with Distributed RAID," which issued as the '750 Patent on July 10, 2012. The '821 Patent issued on July 21, 2015 from Application No. 13/750,417, a continuation of Application No. 12/914,559, which is itself a continuation of Application No. 12/490,810. The '821 Patent thus claims priority through the '750 Patent's

application. Also on June 24, 2009, Pivot3 filed Application No. 12/490,916, titled "Method and System for Protecting Against Multiple Failures in a RAID System," which issued as U.S. Patent No. 8,176,247 (the "'247 Patent") on May 8, 2012. A continuation of that application, Application No. 13/364,439, published on May 24, 2012 as U.S. Patent Application Publication No. 2012/0131383 (the "'383 Publication"). (Exs. 2, 4, 19, 20.)

16. The '393 Patent, the '753 Patent, the '247 Patent, and the '383 Publication (collectively, the "Pivot3 References") each expressly points to the applications that issued as the '909 and '624 Patents. Each Pivot3 Reference states that it "is related to U.S. patent application Ser. No. 12/479,319 entitled 'Method and System for Distributed RAID Implementation' . . . ; Ser. No. 12/479,360, entitled 'Method and System for Data Migration in a Distributed RAID Implementation' . . . all of which are incorporated fully herein by reference." (*See, e.g.*, Ex. 17 ('393 Patent) at 5:31–44; Ex. 19 ('247 Patent) at 5:4–19; *see also* Exs. 18, 20.) Each Pivot3 Reference thus identifies—by serial number, title, inventors, and filing date—the very applications that issued as the '909 and '624 Patents, and incorporates those applications into its own disclosure.

17. The faces of the '393, '753, and '247 Patents likewise identify the Asserted Patents' applications and their prosecution status. For example, the "Other Publications" listed on the faces of the '393 Patent and the '247 Patent include (a) a "Notice of Allowance issued in U.S. Appl. No. 12/479,319," mailed October 5, 2011—the allowance of the application that issued as the '909 Patent; (b) an Office Action issued in Application No. 12/479,319; (c) Office Actions issued in Application No. 12/479,360—the application that issued as the '624 Patent; and (d) an "Office Action issued in U.S. Appl. No. 12/490,810," mailed October 18, 2011—the application that issued as the '750 Patent. (Ex. 17, Other Publications; Ex. 19, Other Publications.) The face of the '753 Patent lists the same PTO actions. (Ex. 18.)

18. The cross-references run in both directions. The ’750 and ’821 Patents themselves state that they are related to, and incorporate by reference, Application Nos. 12/479,319 and 12/479,360 (the ’909 and ’624 Patent applications), Application No. 12/479,434 (the ’393 Patent application), and Application No. 12/490,916 (the ’247 Patent application). (Exs. 2, 4.) The face of the ’750 Patent lists the ’909 Patent and the ’753 Patent among its References Cited, and the face of the ’624 Patent lists the ’393 Patent and the ’753 Patent. (Exs. 2, 3.) The Asserted Patents and the Pivot3 References thus form a body of Pivot3 distributed RAID disclosures, filed and prosecuted contemporaneously and naming overlapping inventors and the same assignee.

## B. Google Repeatedly Cited the Pivot3 References to the PTO While Patenting Its Own Distributed Storage Techniques

19. Beginning in 2010, Google filed a series of patent applications, each naming Robert Cypher as the inventor and assigned to Google, relating to techniques for storing data chunks and error-correcting code chunks across groups of storage nodes so that stored data can be reconstructed when storage nodes fail. At least eight of those applications issued as the following patents (collectively, the “Google Storage Patents”): (a) U.S. Patent No. 8,484,536, “Techniques for data storage, access, and maintenance” (filed March 26, 2010; issued July 9, 2013) (Ex. 9); (b) U.S. Patent No. 8,601,339, “Layered coding techniques for data storage” (filed June 16, 2011; issued December 3, 2013) (Ex. 10); (c) U.S. Patent No. 8,615,698, “Skewed orthogonal coding techniques” (filed September 28, 2011; issued December 24, 2013) (Ex. 11); (d) U.S. Patent No. 8,621,317, “Modified orthogonal coding techniques for storing data” (filed July 25, 2011; issued December 31, 2013) (Ex. 12); (e) U.S. Patent No. 8,640,000, “Nested coding techniques for data storage” (filed June 16, 2011; issued January 28, 2014) (Ex. 13); (f) U.S. Patent No. 8,683,294, “Efficient encoding of homed data” (filed June 16, 2011; issued March 25, 2014) (Ex. 14); (g) U.S. Patent No. 8,719,675, “Orthogonal coding for data storage, access, and maintenance” (filed

September 13, 2010; issued May 6, 2014) (Ex. 15); and (h) U.S. Patent No. 8,856,619, "Storing data across groups of storage nodes" (filed March 9, 2012; issued October 7, 2014) (Ex. 16).

20. The PTO brought the Pivot3 References to Google's attention in Google's own prosecution. Google filed Application No. 12/748,066, which issued as U.S. Patent No. 8,484,536 (the "'536 Patent"), through outside prosecution counsel's Austin, Texas office. In a non-final Office Action rejecting Google's pending claims, sent to Google's counsel on August 16, 2012, the examiner attached a Notice of References Cited listing all four Pivot3 References and stated that "[t]he prior art made of record and not relied upon is considered pertinent to applicant's disclosure." (Ex. 21.) Google, through counsel, responded to that Office Action on January 16, 2013, and the '536 Patent issued on July 9, 2013, listing all four Pivot3 References on its face. (*Id.*; Ex. 9.)

21. Google did not merely receive the Pivot3 References from an examiner—Google itself repeatedly cited them. Between February 14 and March 26, 2013—within about ten weeks after Google responded to the August 16, 2012 Office Action in the '066 application—Google filed an Information Disclosure Statement in each of the seven other applications that issued as the Google Storage Patents. (Ex. 22.) Each of those Information Disclosure Statements lists all four Pivot3 References by number, together with every other reference on the examiner's Notice of References Cited in the '066 application, and asks the examiner to consider them. (*Id.*) The accompanying transmittal letters identify the '066 application as a related co-pending application, and five of those letters state that the cited documents "may be material pursuant to 37 C.F.R. § 1.56." (*Id.*) The seven other Google Storage Patents list all four Pivot3 References on their faces *without* the asterisk that denotes a reference "cited by examiner," reflecting that Google, as the applicant, submitted those references to the PTO itself. (Exs. 10–16; Ex. 22.) Google thus

affirmatively submitted the Pivot3 References to the PTO for consideration in the examination of its own distributed storage applications in at least seven separate applications, resulting in patents that issued between December 2013 and October 2014.

22. Google made these submissions through its patent prosecution counsel acting on Google's behalf and, on information and belief, with the knowledge and at the direction of Google's in-house patent personnel responsible for Google's patent prosecution. An applicant's own citation of a reference to the PTO reflects that the applicant identified and considered that reference. Google's repeated citation of the same Pivot3 References across at least seven separate applications shows that Google was actually aware of Pivot3's distributed RAID patent family, and that such awareness was not merely fleeting or incidental.

23. Google is a sophisticated owner and prosecutor of patents, and it operates the Google Patents search service (patents.google.com), which links each patent to its family members, the references it cites, and the documents that cite it. Google's own Google Patents pages for the '909 and '624 Patents identify Google Storage Patents—including the '536 Patent and U.S. Patent Nos. 8,615,698, 8,621,317, 8,719,675, and 8,856,619—as "Family To Family Citations" of the '909 and '624 Patents. (*See* Dkt. 11-2; Dkt. 11-3.)

**C. Google's Citations to the Pivot3 References Show Knowledge of the Asserted Patents**

24. On information and belief, Google reviewed the Pivot3 References, including at least their faces and specifications, in citing them in Google's own patent applications. In so doing, Google gained knowledge (a) that Pivot3 had filed Application Nos. 12/479,319 and 12/479,360 directed to distributed RAID, identified by serial number and title; (b) that those applications were incorporated into the very references Google was citing; (c) that the PTO had issued a Notice of

Allowance in Application No. 12/479,319 on October 5, 2011; and (d) that the PTO had issued Office Actions in Application Nos. 12/479,360 and 12/490,810.

25. By the time the PTO sent the Pivot3 References to Google on August 16, 2012—and well before Google itself cited them in its own Information Disclosure Statements in February and March 2013—each of those identified applications had already issued as an Asserted Patent: Application No. 12/479,319 as the '909 Patent (January 3, 2012); Application No. 12/490,810 as the '750 Patent (July 10, 2012); and Application No. 12/479,360 as the '624 Patent (August 7, 2012). A review of those identified applications on the PTO's public records, or on Google's own Google Patents service, would have shown that each had issued as a patent. And because the Pivot3 References told Google that Application No. 12/479,319 had been allowed, Google was aware that the application had been approved for issuance as a patent.

26. On information and belief, in reviewing and repeatedly citing the Pivot3 References in connection with its own distributed storage applications, Google investigated the related Pivot3 applications that those references identified and incorporated, and thereby learned of the '909, '624, and '750 Patents. Accordingly, Google had actual knowledge of the '909, '624, and '750 Patents as early as August 2012, when Google received the examiner's citation of the Pivot3 References, and no later than February 14, 2013, when Google itself began submitting the Pivot3 References to the PTO in its own Information Disclosure Statements, as set forth above. Google's knowledge was renewed and reinforced each time Google cited the Pivot3 References in its later applications, which issued as late as October 2014.

27. Google's knowledge of the '750 Patent is further shown by the fact that three of the Pivot3 References Google cited list, on their faces, the PTO's Office Action in Application No. 12/490,810—the application that issued as the '750 Patent—and by the fact that the '750 Patent

shares inventors and an assignee with, cites, and incorporates by reference the same family of Pivot3 applications that Google was repeatedly citing.

28. The ’821 Patent issued on July 21, 2015 as a continuation in the ’750 Patent’s family; it shares the ’750 Patent’s inventors and specification and identifies the ’750 Patent’s application on its face. (Ex. 4.) Having learned of the ’750 Patent and Pivot3’s distributed RAID patent family, and having repeatedly cited that family in its own prosecution in applications that issued as late as October 2014, Google, on information and belief, was aware of the published application that issued as the ’821 Patent (U.S. Patent Application Publication No. 2013/0219120, published August 22, 2013), continued to monitor Pivot3’s distributed RAID patent family, and learned of the resulting ’821 Patent upon or shortly after its issuance in July 2015.

29. At minimum, Google was willfully blind to the existence of the Asserted Patents. On information and belief, Google subjectively believed that there was a high probability that the Pivot3 applications identified in the Pivot3 References had issued as patents covering Pivot3’s distributed RAID technology: the references Google repeatedly cited told Google that those applications existed, were incorporated by reference, had been examined, and (for Application No. 12/479,319) had been allowed; Google itself deemed the Pivot3 References relevant enough to its own distributed storage patenting efforts to cite them in at least seven of its own patent applications; and Pivot3 marked its products, including through user interface splash screens listing its patent numbers, as alleged below. Despite that belief, Google took deliberate actions to avoid confirming the existence and scope of the Asserted Patents. On information and belief, Google repeatedly reproduced the Pivot3 References in its own submissions to the PTO to secure its own patents while deliberately refraining from reviewing the issued patents that those same

references identified, and, on information and belief, Google maintains a policy or practice of not reviewing the patents of others, including Pivot3's, for potential infringement.

**D. Google Knew, or Was Willfully Blind to the Fact, That Its Conduct Infringes**

30. The Google Storage Patents and the Accused Instrumentalities address the same problem and use the same core approach as the Pivot3 References, the '909 and '624 Patents, and the distributed RAID systems on which the '750 and '821 Patents build: storing data together with redundancy information (such as parity or error-correcting code chunks) across multiple independent storage nodes so that data remains available and can be rebuilt when a node fails. For example, the '536 Patent describes "generating a plurality of error-correcting code chunks from a plurality of data chunks," where "[t]he data chunks are allocated to a local group of storage nodes" and the error-correcting code chunks are allocated between the local group and one or more remote groups of storage nodes. (Ex. 9, Abstract.) Likewise, as shown in Exhibits 5–8, Google's Colossus implements distributed RAID through erasure coding and/or replication, dividing a volume or file into segments, calculating redundancy segments, and storing the segments and their redundancy segments on different storage servers ("D servers"). (Exs. 5–8.)

31. On information and belief, when Google identified the Pivot3 References as relevant to its own distributed storage applications, Google's engineers and patent personnel evaluated Pivot3's distributed RAID disclosures against Google's own distributed storage techniques. With knowledge of the Asserted Patents and their claims, and with full knowledge of the architecture and operation of its own Colossus and Hyperdisk systems, Google knew—or at a minimum was willfully blind to the high probability—that the Accused Instrumentalities practice the methods claimed in the Asserted Patents, as shown in Exhibits 5–8.

32. Despite that knowledge, and without a license from Pivot3 or Cypresswood, Google has continued to make, use, sell, and offer Google Cloud services that incorporate the Accused Instrumentalities, and to instruct and encourage its customers to use them through Google Cloud documentation, blog posts, and technical materials, including those cited in Exhibits 5–8.

33. Further facts bearing on Google's knowledge and intent—including Google's internal handling of the Pivot3 References, its prosecution files and communications, and its engineers' and in-house patent personnel's awareness of Pivot3's patents—are within Google's possession and are expected to be further uncovered through discovery.

## JURISDICTION AND VENUE

34. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

35. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

36. This Court has personal jurisdiction over Google in this action because Google has committed acts of infringement within this District giving rise to this action, has regular and established places of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Google would not offend traditional notions of fair play and substantial justice. Google, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Western District of Texas, regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in Texas, and commits acts of infringement of Cypresswood's patents in this District by, among other things,

supplying, distributing, developing, making, using, offering to sell, and selling Google Colossus and Hyperdisk.

37. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Google resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District.

38. On information and belief, Google operates Google Cloud servers in this District, which support Google Colossus and Hyperdisk. For example, on information and belief, Google LLC operates network edge locations in at least Austin, TX, and San Antonio, TX.[8] On information and belief, Google LLC operates the infringing instrumentalities with and through these edge nodes. Google LLC describes these network edge locations as "Google Cloud offers connections to Google Cloud services from over 200 locations across the following metropolitan areas."[9] Given Google Colossus and Hyperdisk are functionalities of Google Cloud services, Google LLC infringes in each of the "200 locations," including in this District.

39. On information and belief, Google employs engineering, product-operations, and marketing teams at its Austin campus—including personnel working with Google Cloud and Colossus and Hyperdisk services. From their offices in this District, those employees maintain, upgrade and develop Google Cloud services.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 8,090,909**

40. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

[8] https://docs.cloud.google.com/vpc/docs/edge-locations
[9] *Id*.

41. The Accused Instrumentalities for the ’909 Patent are, without limitation, the servers, relays, computers, and other infrastructure used to operate Google Cloud including Colossus and Hyperdisk, and all versions and variations thereof since the issuance of the ’909 Patent.

42. Cypresswood is the owner of the ’909 Patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

43. The written description of the ’909 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

44. Cypresswood and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’909 Patent at least through user interface splash screens listing patent numbers, and product documentation referring to Pivot3’s patents. In addition, Cypresswood presently asserts only method claims of the ’909 Patent. Cypresswood is therefore entitled to damages for Defendant’s past infringement.

45. Defendant has directly infringed (literally and equivalently) the ’909 Patent by making, using, selling, offering for sale, or importing products, infrastructure, and/or services that infringe the claims of the ’909 Patent without a license or permission from Cypresswood.

46. On information and belief, Defendant uses, imports, offers for sale, and sells certain infringing products in the United States with the Accused Instrumentalities. Exhibit 5 provides a description of the Accused Instrumentalities and a chart showing examples of how Defendant, and those it causes to indirectly infringe, infringe Claim 4 of the ’909 Patent, which Cypresswood

provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

47. Defendant has also knowingly and intentionally induced and contributed, and continues to induce and contribute, to infringement of the ’909 Patent in violation of 35 U.S.C. §§ 271(b)-(c) without a license or permission from Cypresswood. For example, as alleged in Paragraphs 13–33 above, Defendant has had knowledge of the ’909 Patent and the infringing nature of the Accused Instrumentalities since at least around February 2013—when Google submitted its own Information Disclosure Statements listing the Pivot3 References, which identify and incorporate the application that issued as the ’909 Patent and, in three cases, list that application’s Notice of Allowance on their faces—and, on information and belief, since as early as August 2012, or in the alternative has been willfully blind to the ’909 Patent and Google’s infringement since that time, and in all events no later than the filing and service of the original Complaint in this case on July 24, 2026. The Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

48. Despite this knowledge, Defendant has indirectly infringed and continues to indirectly infringe by actively encouraging, instructing, and inducing, others (including its vendors and customers) to use, integrate, offer to sell, sell, and import the Accused Instrumentalities in ways that directly infringe the ’909 Patent. Defendant does so knowing and intending that its customers will commit these infringing acts, thereby specifically intending for and inducing its customers to infringe the ’909 Patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information, education and instructions on the use of the Accused Instrumentalities, providing the Accused Instrumentalities to customers, and indemnifying patent infringement within the United States. For

example, Defendant publishes Google Cloud documentation, blog posts, and technical materials describing, promoting, and instructing customers on the use of the Accused Instrumentalities, including those cited in Exhibit 5. Defendant has continued these acts after acquiring knowledge of the ’909 Patent as alleged above, including after service of the original Complaint.

49. Defendant has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities infringes the ’909 Patent. Despite that knowledge, and without a license, Defendant has continued to make, use, offer to sell, and sell the Accused Instrumentalities, deliberately and intentionally infringing the ’909 Patent, including after the filing and service of the original Complaint. Defendant’s infringement of the ’909 Patent has therefore been, and continues to be, willful, entitling Cypresswood to enhanced damages under 35 U.S.C. § 284.

50. Cypresswood has been damaged by Defendant’s infringement of the ’909 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 8,219,750**

51. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

52. The Accused Instrumentalities for the ’750 Patent are, without limitation, the servers, relays, computers, and other infrastructure used to operate Google Cloud including Colossus and Hyperdisk, and all versions and variations thereof since the issuance of the ’750 Patent.

53. Cypresswood is the owner of the ’750 Patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

54. The written description of the ’750 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55. Cypresswood and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’750 Patent at least through user interface splash screens listing patent numbers, and product documentation referring to Pivot3’s patents. In addition, Cypresswood presently asserts only method claims of the ’750 Patent. Cypresswood is therefore entitled to damages for Defendant’s past infringement.

56. Defendant has directly infringed (literally and equivalently) the ’750 Patent by making, using, selling, offering for sale, or importing products, infrastructure, and/or services that infringe the claims of the ’750 Patent without a license or permission from Cypresswood.

57. On information and belief, Defendant uses, imports, offers for sale, and sells certain infringing products in the United States with the Accused Instrumentalities. Exhibit 6 provides a description of the Accused Instrumentalities and a chart showing examples of how Defendant, and those it causes to indirectly infringe, infringe Claim 5 of the ’750 Patent, which Cypresswood provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

58. Defendant has also knowingly and intentionally induced and contributed, and continues to induce and contribute, to infringement of the ’750 Patent in violation of 35 U.S.C. §§

271(b)-(c) without a license or permission from Cypresswood. For example, as alleged in Paragraphs 13–33 above, Defendant has had knowledge of the ’750 Patent and the infringing nature of the Accused Instrumentalities since at least around February 2013—when Google submitted its own Information Disclosure Statements listing the Pivot3 References, three of which list on their faces the PTO’s Office Action in the application that issued as the ’750 Patent—and, on information and belief, since as early as August 2012, or in the alternative has been willfully blind to the ’750 Patent and Google’s infringement since that time, and in all events no later than the filing and service of the original Complaint in this case on July 24, 2026. The Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

59. Despite this knowledge, Defendant has indirectly infringed and continues to indirectly infringe by actively encouraging, instructing, and inducing, others (including its vendors and customers) to use, integrate, offer to sell, sell, and import the Accused Instrumentalities in ways that directly infringe the ’750 Patent. Defendant does so knowing and intending that its customers will commit these infringing acts, thereby specifically intending for and inducing its customers to infringe the ’750 Patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information, education and instructions on the use of the Accused Instrumentalities, providing the Accused Instrumentalities to customers, and indemnifying patent infringement within the United States. For example, Defendant publishes Google Cloud documentation, blog posts, and technical materials describing, promoting, and instructing customers on the use of the Accused Instrumentalities, including those cited in Exhibit 6. Defendant has continued these acts after acquiring knowledge of the ’750 Patent as alleged above, including after service of the original Complaint.

60. Defendant has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities infringes the ’750 Patent. Despite that knowledge, and without a license, Defendant has continued to make, use, offer to sell, and sell the Accused Instrumentalities, deliberately and intentionally infringing the ’750 Patent, including after the filing and service of the original Complaint. Defendant’s infringement of the ’750 Patent has therefore been, and continues to be, willful, entitling Cypresswood to enhanced damages under 35 U.S.C. § 284.

61. Cypresswood has been damaged by Defendant’s infringement of the ’750 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**COUNT III**

**INFRINGEMENT OF U.S. PATENT NO. 8,239,624**

62. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

63. The Accused Instrumentalities for the ’624 Patent are, without limitation, the servers, relays, computers, and other infrastructure used to operate Google Cloud including Colossus and Hyperdisk, and all versions and variations thereof since the issuance of the ’624 Patent.

64. Cypresswood is the owner of the ’624 Patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

65. The written description of the ’624 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66. Cypresswood and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’624 Patent at least through user interface splash screens listing patent numbers, and product documentation referring to Pivot3’s patents. In addition, Cypresswood presently asserts only method claims of the ’624 Patent. Cypresswood is therefore entitled to damages for Defendant’s past infringement.

67. Defendant has directly infringed (literally and equivalently) the ’624 Patent by making, using, selling, offering for sale, or importing products, infrastructure, and/or services that infringe the claims of the ’624 Patent without a license or permission from Cypresswood.

68. On information and belief, Defendant uses, imports, offers for sale, and sells certain infringing products in the United States with the Accused Instrumentalities. Exhibit 7 provides a description of the Accused Instrumentalities and a chart showing examples of how Defendant, and those it causes to indirectly infringe, infringe Claim 8 of the ’624 Patent, which Cypresswood provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

69. Defendant has also knowingly and intentionally induced and contributed, and continues to induce and contribute, to infringement of the ’624 Patent in violation of 35 U.S.C. §§ 271(b)-(c) without a license or permission from Cypresswood. For example, as alleged in Paragraphs 13–33 above, Defendant has had knowledge of the ’624 Patent and the infringing nature of the Accused Instrumentalities since at least around February 2013—when Google submitted its own Information Disclosure Statements listing the Pivot3 References, which identify and incorporate the application that issued as the ’624 Patent—and, on information and belief,

since as early as August 2012, or in the alternative has been willfully blind to the ’624 Patent and Google’s infringement since that time, and in all events no later than the filing and service of the original Complaint in this case on July 24, 2026. The Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

70. Despite this knowledge, Defendant has indirectly infringed and continues to indirectly infringe by actively encouraging, instructing, and inducing, others (including its vendors and customers) to use, integrate, offer to sell, sell, and import the Accused Instrumentalities in ways that directly infringe the ’624 Patent. Defendant does so knowing and intending that its customers will commit these infringing acts, thereby specifically intending for and inducing its customers to infringe the ’624 Patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information, education and instructions on the use of the Accused Instrumentalities, providing the Accused Instrumentalities to customers, and indemnifying patent infringement within the United States. For example, Defendant publishes Google Cloud documentation, blog posts, and technical materials describing, promoting, and instructing customers on the use of the Accused Instrumentalities, including those cited in Exhibit 7. Defendant has continued these acts after acquiring knowledge of the ’624 Patent as alleged above, including after service of the original Complaint.

71. Defendant has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities infringes the ’624 Patent. Despite that knowledge, and without a license, Defendant has continued to make, use, offer to sell, and sell the Accused Instrumentalities, deliberately and intentionally infringing the ’624 Patent, including after the filing and service of the original Complaint. Defendant’s infringement of the ’624 Patent has

therefore been, and continues to be, willful, entitling Cypresswood to enhanced damages under 35 U.S.C. § 284.

72. Cypresswood has been damaged by Defendant’s infringement of the ’624 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 9,086,821

73. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

74. The Accused Instrumentalities for the ’821 Patent are, without limitation, the servers, relays, computers, and other infrastructure used to operate Google Cloud including Colossus and Hyperdisk, and all versions and variations thereof since the issuance of the ’821 Patent.

75. Cypresswood is the owner of the ’821 Patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

76. The written description of the ’821 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

77. Cypresswood and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’821 Patent at least through user interface splash screens listing patent numbers, and product documentation referring to Pivot3’s patents. In addition,

Cypresswood presently asserts only method claims of the ’821 Patent. Cypresswood is therefore entitled to damages for Defendant’s past infringement.

78. Defendant has directly infringed (literally and equivalently) the ’821 Patent by making, using, selling, offering for sale, or importing products, infrastructure, and/or services that infringe the claims of the ’821 Patent without a license or permission from Cypresswood.

79. On information and belief, Defendant uses, imports, offers for sale, and sells certain infringing products in the United States with the Accused Instrumentalities. Exhibit 8 provides a description of the Accused Instrumentalities and a chart showing examples of how Defendant, and those it causes to indirectly infringe, infringe Claim 13 of the ’821 Patent, which Cypresswood provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

80. Defendant has also knowingly and intentionally induced and contributed, and continues to induce and contribute, to infringement of the ’821 Patent in violation of 35 U.S.C. §§ 271(b)-(c) without a license or permission from Cypresswood. For example, as alleged in Paragraphs 13–33 above, Defendant has had knowledge of the ’821 Patent and the infringing nature of the Accused Instrumentalities since at least around July 2015—upon the issuance of the ’821 Patent as a continuation in the ’750 Patent’s family, which, on information and belief, Google had been monitoring—or in the alternative has been willfully blind to the ’821 Patent and Google’s infringement since that time, and in all events no later than the filing and service of the original Complaint in this case on July 24, 2026. The Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

81. Despite this knowledge, Defendant has indirectly infringed and continues to indirectly infringe by actively encouraging, instructing, and inducing, others (including its vendors

and customers) to use, integrate, offer to sell, sell, and import the Accused Instrumentalities in ways that directly infringe the ’821 Patent. Defendant does so knowing and intending that its customers will commit these infringing acts, thereby specifically intending for and inducing its customers to infringe the ’821 Patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information, education and instructions on the use of the Accused Instrumentalities, providing the Accused Instrumentalities to customers, and indemnifying patent infringement within the United States. For example, Defendant publishes Google Cloud documentation, blog posts, and technical materials describing, promoting, and instructing customers on the use of the Accused Instrumentalities, including those cited in Exhibit 8. Defendant has continued these acts after acquiring knowledge of the ’821 Patent as alleged above, including after service of the original Complaint.

82. Defendant has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities infringes the ’821 Patent. Despite that knowledge, and without a license, Defendant has continued to make, use, offer to sell, and sell the Accused Instrumentalities, deliberately and intentionally infringing the ’821 Patent, including after the filing and service of the original Complaint. Defendant’s infringement of the ’821 Patent has therefore been, and continues to be, willful, entitling Cypresswood to enhanced damages under 35 U.S.C. § 284.

83. Cypresswood has been damaged by Defendant’s infringement of the ’821 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendant has directly and indirectly infringed the Asserted Patents, either literally and/or under the doctrine of equivalents;

b. A permanent injunction prohibiting Defendant from further acts of infringement of the Asserted Patents;

c. A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the Asserted Patents;

d. A judgment that Defendant's infringement of the Asserted Patents has been willful, and an award of enhanced damages of up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

e. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

f. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

g. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: October 19, 2026

Respectfully submitted,

/s/ *Benjamin T. Wang*
Benjamin T. Wang
bwang@raklaw.com
Marc A. Fenster
mfenster@raklaw.com
Paul Kroeger
pkroeger@raklaw.com
Neil Rubin
nrubin@raklaw.com
Joshua Scheufler
jscheufler@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
**RUSS AUGUST & KABAT**
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474

Andrea L. Fair
State Bar No. 24078488
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
E-mail: andrea@millerfairhenry.com

*Attorneys for Plaintiff*
*Cypresswood Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Benjamin T. Wang*