# Exhibit 21

# FISH & RICHARDSON P.C.

Street Address
One Congress Plaza
Suite 810
111 Congress Avenue
Austin, TX 78701

Mail Address
P.O. Box 1022
Minneapolis, Minnesota
55440-1022

Telephone
512 472-5070

Facsimile
877 769-7945

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

ATLANTA
BOSTON
DALLAS
DELAWARE
HOUSTON
MUNICH
NEW YORK
SILICON VALLEY
SOUTHERN CALIFORNIA
TWIN CITIES
WASHINGTON, DC

March 26, 2010

Attorney Docket No.: 16113-2099001 / GP-2682-00-US

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Presented for filing is a new original patent application of:

Applicant: ROBERT CYPHER

Title: TECHNIQUES FOR DATA STORAGE, ACCESS, AND MAINTENANCE

Enclosed are the following papers, including those required to receive a filing date under 37 C.F.R. § 1.53(b):

| | Pages |
|---|---|
| Specification | 20 |
| Claims | 9 |
| Abstract | 1 |
| Declaration | 2 |
| Drawing(s) | 10 |

| | | | Small Entity | Large Entity | |
|---|---|---|---|---|---|
| Basic Filing Fee | | | 165 | 330 | $330 |
| Search Fee | | | 270 | 540 | $540 |
| Examination fee | | | 110 | 220 | $220 |
| Total Claims 48 | over 20 | **28 x $52** | 26 | 52 | $1456 |
| Independent Claims 9 | over 3 | **6 x $220** | 110 | 220 | $1320 |
| Fee for Multiple Dependent claims | | | 185 | 370 | $0 |
| Fee for each additional 50 pages of Specification and Drawings over 100 | (20+10-100)/50 = 0 x | | 135 | 270 | $0 |

**CERTIFICATE OF MAILING BY EFS-WEB FILING**

I hereby certify that this paper was filed with the Patent and Trademark Office using the EFS-WEB system on this date: March 26, 2010

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/748,066 | 03/26/2010 | Robert Cypher | 16113-2099001 | 4435 |

26192 7590 08/16/2012
FISH & RICHARDSON P.C.
PO BOX 1022
MINNEAPOLIS, MN 55440-1022

| EXAMINER | |
|---|---|
| TABONE JR, JOHN J | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2117 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/16/2012 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

PATDOCTC@fr.com

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 12/748,066 | CYPHER, ROBERT |
| | Examiner | Art Unit |
| | JOHN J. TABONE JR | 2117 |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *26 March 2012*.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☒ An election was made by the applicant in response to a restriction requirement set forth during the interview on *02 August 2012*; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☐ Claim(s) *1-48* is/are pending in the application.

5a) Of the above claim(s) *12-16,28-32 and 44-48* is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) *1-11,17-27 and 33-43* is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on *26 March 2012* is/are: a)☒ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

**DETAILED ACTION**

1. Claims 1-48 are currently pending in the application and have been examined. In the Restriction below, the Applicant has elected claims 1-11, 17-27 and 33-43 of Group I. Claims 12-16, 28-32 and 44-48 have been withdrawn from consideration.

***Election/Restrictions***

2. Restriction to one of the following inventions is required under 35 U.S.C. 121:

I. Claims 1-11, 17-27 and 33-43, drawn to allocating data chunks to a local storage node and allocating error-correcting code chunks to both local and remote storage nodes, classified in class 714, subclass 766.

II. Claims 12-16, 28-32 and 44-48, drawn to an error correction process of identifying damaged data chunks and storing them in a first storage node of a first group of storage nodes and identifying healthy nodes at the first group of storage nodes, classified in class 714, subclass 752.

Inventions I and II are related as combination and subcombination. Inventions in this relationship are distinct if it can be shown that (1) the combination as claimed does not require the particulars of the subcombination as claimed for patentability, and (2) that the subcombination has utility by itself or in other combinations (MPEP § 806.05(c)). In the instant case, the combination as claimed does not require the particulars of the subcombination as claimed because the Invention of Group I drawn to allocating data chunks to a local storage node and allocating error-correcting code

chunks to both local and remote storage nodes. The subcombination the Invention of Group II has separate utility such as an error correction process of identifying damaged data chunks and storing them in a first storage node of a first group of storage nodes and identifying healthy nodes at the first group of storage nodes.

The examiner has required restriction between combination and subcombination inventions. Where applicant elects a subcombination, and claims thereto are subsequently found allowable, any claim(s) depending from or otherwise requiring all the limitations of the allowable subcombination will be examined for patentability in accordance with 37 CFR 1.104. See MPEP § 821.04(a). Applicant is advised that if any claim presented in a continuation or divisional application is anticipated by, or includes all the limitations of, a claim that is allowable in the present application, such claim may be subject to provisional statutory and/or nonstatutory double patenting rejections over the claims of the instant application.

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and/or examination burden if restriction were not required because at least the following reason(s) apply:

The Invention of Group I merely allocate data and error-correction code to a particular storage node where the Invention of Group II is concerned with an error-correction method.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a invention to be examined** even though the requirement

may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected invention**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the inventions to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other invention.

During a telephone conversation with Agent Matthew Browning on 08/02/2012 a provisional election was made without traverse to prosecute the invention of Group I, claims 1-11, 17-27 and 33-43. Affirmation of this election must be made by applicant in replying to this Office action. Claims 12-16, 28-32 and 44-48 are withdrawn from further consideration by the examiner, 37 CFR 1.142(b), as being drawn to a non-elected invention.

***Claim Rejections - 35 USC § 101***

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

3. Claim(s) 17-27 are rejected under 35 USC 101 since the claims are directed to non-statutory subject matter. Claim(s) 17-27 recite a computer program product that includes a computer storage medium which appears to cover both transitory and non-transitory embodiments. The United States Patent and Trademark Office (USPTO) is required to give claims their broadest reasonable interpretation consistent with the specification during proceedings before the USPTO. *See In re Zletz*, 893 F.2d 319 (Fed. Cir. 1989) (during patent examination the pending claims must be interpreted as broadly as their terms reasonably allow). The broadest reasonable interpretation of a claim drawn to a computer storage medium (also called machine readable medium and other such variations) typically covers forms of non-transitory tangible media **and** transitory propagating signals *per se* in view of the ordinary and customary meaning of computer readable media, particularly when the specification is silent. *See* MPEP 2111.01. When the broadest reasonable interpretation of a claim covers a signal *per se*, the claim **must** be rejected under 35 U.S.C. § 101 as covering non-statutory subject matter. *See In re Nuijten*, 500 F.3d 1346, 1356-57 (Fed. Cir. 2007) (transitory embodiments are not directed to statutory subject matter) and *Interim Examination Instructions for Evaluating Subject Matter Eligibility Under 35 U.S.C. § 101*, Aug. 24, 2009; p. 2.

The Examiner suggests that the Applicant add the limitation “non-transitory computer readable medium" to the claim(s) in order to properly render the claims in statutory form in view of their broadest reasonable interpretation in light of the originally filed specification.

## ***Claim Rejections - 35 USC § 112***

The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

4. Claim 11 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

<u>Claim 11:</u>

This claim recites the limitation "the number of error-correcting code chunks" in line 2. There is insufficient antecedent basis for this limitation in the claim.

## ***Claim Rejections - 35 USC § 102***

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

5. Claims 1, 2, 9, 10, 17, 18, 25, 26, 33, 34, 41 and 42 are rejected under 35 U.S.C. 102(b) as being anticipated by **Franzenburg** (US-20030149750), hereinafter Franzenburg.

Claim 1, 17 and 33:

**Franzenburg** teaches a computer-implemented method, a computer storage medium and a system comprising:

generating a plurality of error-correcting code chunks from a plurality of data chunks, wherein the error-correcting code chunks can be used to reconstruct one or more of the data chunks (**The original information to be stored is sent from the client systems to the server or the network-attached storage 100. This original information is written on the array's hard disks 104-110 by the storage array controller and then parity information is generated**, ¶ [0041]);

allocating the data chunks to a local group of storage nodes (**Fig. 4, local independent disks 104, 106, 108, 110 that store information sent to the storage array controller 102,** ¶ [0041]); and

allocating the error-correcting code chunks between the local group of storage nodes (**Fig. 1, mass storage device 30, which stores parity in the local mass storage device 30**) and one or more remote groups of storage nodes (**Fig. 4, [t]he information created by the parity generator 112 will be stored in a remote networked location. The parity data is stored on a client system that includes a client mass storage device 114, 116,** ¶¶ [0041]-[0042]), where:

each remote group of storage nodes (**client mass storage device 114, 116**) is allocated one or more unique error-correcting code chunks (**Fig. 4, distributed storage file 118, 120 that is configured to store the parity data, A, B, C and D, ¶** [0042]) from the error-correcting code chunks;

any of the error-correcting code chunks not allocated to a remote group of storage nodes are allocated to the local group of storage nodes (**An alternative embodiment of the present device can be a combination of FIGS. 1, 3 and 4 or the storage of distributed data on client systems interleaved with parity data as necessary. In a similar manner, redundant data can be stored on client mass storage devices and the interleaved parity data related to that data can be stored on the client systems' mass storage devices**, ¶ [0042]).

<u>Claims 9, 25 and 41:</u>

**Franzenburg** teaches a computer-implemented method, a computer storage medium and a system comprising:

generating a plurality of error-correcting code chunks using a plurality of data chunks, wherein the error-correcting code chunks can be used to reconstruct one or more of the data chunks (**The original information to be stored is sent from the client systems to the server or the network-attached storage 100. This original information is written on the array's hard disks 104-110 by the storage array controller and then parity information is generated**, ¶ [0041]);

allocating the data chunks to each of two or more groups of storage nodes (**Fig. 1, The storage array controller includes one or more mass storage devices 26, 28, 30 that are linked to and directed by the storage array controller**, ¶ [0022]); and

allocating the error-correcting code chunks between the two or more groups of storage nodes (**Fig. 1, A Parity-B Parity stored on mass storage device 30**), where:

each group of storage nodes is allocated one or more unique error-correcting code chunks (**See divisions of data A-D and parity A-D in Fig. 1**).

<u>Claims 2, 10, 18, 26, 34 and 42:</u>

**Franzenburg** teaches each group of storage nodes is allocated a same number of error-correcting code chunks (**See divisions of data A-D and parity A-D in Figs. 1 and 4**).

<u>Claims 3, 19 and 35:</u>

**Franzenburg** teaches each data chunk is stored at a distinct storage node of the local group of storage nodes (**See divisions of data A-D in Figs. 1 and 4**); and

each error-correcting code chunk at each remote group of storage nodes is stored at a distinct storage node of the group of storage nodes (**See divisions of parity A-D in Figs. 1 and 4**).

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the

invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6. Claims 4-8, 11, 20-24, 27, 36-40 and 43 are rejected under 35 U.S.C. 103(a) as being unpatentable over **Franzenburg** (US-20030149750), hereinafter Franzenburg.

Claims 4-8, 11, 20-24, 27, 36-40 and 43:

The recited limitations of these claims have not been claimed by the applicant as having a patentable distinction or features that would distinguish the device from other devices. Instead, features such as *having the data chunks and ECC chunks being the same size, identifying damaged chunks using the ECC, using MDS ECC, which data center the local and remote groups of storage nodes reside and a formula for calculating ECC chunks* appears to be in the realm of design requirements in the practice of sound engineering principles, to distribute data and ECC for that data among storage nodes, rather than a unique circuit feature that would be patentable, and therefore represents a prima facie case of obviousness. These features would be obvious design choices to one skilled in the art with **Franzenburg** before them.

Applicants can rebut a prima facie case of obviousness by showing the criticality of the claimed arrangement. "The law is replete with cases in which the difference between the claimed invention and the prior art is some range or other variable within the claims. In such a situation, the applicant must show that the particular range is critical, generally by showing that the claimed range achieves unexpected results relative to the prior art range." In re Woodruff, 919 F.2d 1575, 16 USPQ2d 1934 (Fed. Cir. 1990). See MPEP § 716.02 - § 716.02(g) for a discussion of criticality and unexpected results.

***Conclusion***

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. See PTO-892.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to JOHN J. TABONE JR whose telephone number is (571)272-3827. The examiner can normally be reached on M-F.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Ajay Bhatia can be reached on (571) 272-3906. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/JOHN J TABONE JR/
Primary Examiner, Art Unit 2117
08/08/2012

| *Notice of References Cited* | Application/Control No. 12/748,066 | Applicant(s)/Patent Under Reexamination CYPHER, ROBERT | |
|---|---|---|---|
| | Examiner JOHN J. TABONE JR | Art Unit 2117 | Page 1 of 3 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-8,213,205 | 07-2012 | Rajan, Suresh Natarajan | 365/51 |
| * | B | US-2003/0149750 | 08-2003 | Franzenburg, Alan M. | 709/220 |
| * | C | US-2009/0265578 | 10-2009 | Baloun et al. | 714/6 |
| * | D | US-8,090,792 | 01-2012 | Dubnicki et al. | 709/217 |
| * | E | US-6,151,641 | 11-2000 | Herbert, Brian K. | 710/22 |
| * | F | US-6,216,247 | 04-2001 | Creta et al. | 714/763 |
| * | G | US-2012/0131383 | 05-2012 | Galloway et al. | 714/6.22 |
| * | H | US-8,176,247 | 05-2012 | Galloway et al. | 711/114 |
| * | I | US-8,140,753 | 03-2012 | Galloway et al. | 711/114 |
| * | J | US-7,546,484 | 06-2009 | Sen et al. | 714/6.3 |
| * | K | US-8,145,865 | 03-2012 | Longinov et al. | 711/165 |
| * | L | US-7,624,229 | 11-2009 | Longinov, Vadim | 711/113 |
| * | M | US-8,082,393 | 12-2011 | Galloway et al. | 711/114 |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| ***Notice of References Cited*** | Application/Control No.<br>12/748,066 | Applicant(s)/Patent Under Reexamination<br>CYPHER, ROBERT | |
|---|---|---|---|
| | Examiner<br>JOHN J. TABONE JR | Art Unit<br>2117 | Page 2 of 3 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2012/0042201 | 02-2012 | Resnick, David R. | 714/6.2 |
| * | B | US-2012/0042200 | 02-2012 | TAKEUCHI et al. | 714/6.2 |
| * | C | US-2010/0037117 | 02-2010 | Pescatore, John C. | 714/752 |
| * | D | US-8,234,539 | 07-2012 | Erez, Eran | 714/755 |
| * | E | US-7,831,764 | 11-2010 | Nakajima et al. | 711/103 |
| * | F | US-7,774,681 | 08-2010 | Earhart et al. | 714/763 |
| * | G | US-7,676,730 | 03-2010 | Haugan et al. | 714/769 |
| * | H | US-7,505,890 | 03-2009 | Kuznetsov et al. | 703/27 |
| * | I | US-6,378,038 | 04-2002 | Richardson et al. | 711/114 |
| * | J | US-2006/0080505 | 04-2006 | Arai et al. | 711/114 |
| * | K | US-7,861,035 | 12-2010 | Baek et al. | 711/114 |
| * | L | US-6,721,317 | 04-2004 | Chong, Jr., Fay | 370/389 |
| * | M | US-7,739,446 | 06-2010 | Kano, Yoshiki | 711/112 |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Notice of References Cited* | Application/Control No. 12/748,066 | Applicant(s)/Patent Under Reexamination CYPHER, ROBERT | |
|---|---|---|---|
| | Examiner JOHN J. TABONE JR | Art Unit 2117 | Page 3 of 3 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-8,180,954 | 05-2012 | Kilzer et al. | 711/103 |
| * | B | US-8,065,555 | 11-2011 | Maiyuran et al. | 714/6.12 |
| * | C | US-7,861,052 | 12-2010 | Kawamura et al. | 711/165 |
| * | D | US-7,398,459 | 07-2008 | Park et al. | 714/800 |
| * | E | US-7,356,752 | 04-2008 | Hewitt et al. | 714/755 |
| * | F | US-6,032,269 | 02-2000 | Renner, Jr., William F. | 714/37 |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant | : Robert Cypher | Art Unit | : 2117 |
| Serial No. | : 12/748,066 | Examiner | : John J. Tabone, Jr. |
| Filed | : March 26, 2010 | Conf. No. | : 4435 |
| Title | : TECHNIQUES FOR DATA STORAGE, ACCESS, AND MAINTENANCE | | |

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

AMENDMENT IN REPLY TO ACTION OF AUGUST 16, 2012

Please amend the above-identified application as follows:

<u>Amendments to the Claims</u>:

This listing of claims replaces all prior versions and listings of claims in the application:

1. (Original) A computer-implemented method comprising:

generating a plurality of error-correcting code chunks from a plurality of data chunks, wherein the error-correcting code chunks can be used to reconstruct one or more of the data chunks;

allocating the data chunks to a local group of storage nodes; and

allocating the error-correcting code chunks between the local group of storage nodes and one or more remote groups of storage nodes, where:

each remote group of storage nodes is allocated one or more unique error-correcting code chunks from the error-correcting code chunks;

any of the error-correcting code chunks not allocated to a remote group of storage nodes are allocated to the local group of storage nodes.

2. (Original) The method of claim 1, where:

each remote group of storage nodes is allocated a same number of the error-correcting code chunks.

3. (Original) The method of claim 1, where:

each data chunk is stored at a distinct storage node of the local group of storage nodes; and

each error-correcting code chunk at each remote group of storage nodes is stored at a distinct storage node of the group of storage nodes.

4. (Original) The method of claim 1, where each error-correcting code chunk and each data chunk is the same size.

5. (Original) The method of claim 1, where each data chunk and each error-correcting code chunk is stored using an error-detecting code so that damaged chunks can be identified.

6. (Original) The method of claim 1, where generating the error-correcting code chunks includes using a minimum-distance separable (MDS) error-correcting code.

7. (Original) The method of claim 1, where the local group of storage nodes is a first data center and each of the remote groups of storages nodes is a distinct data center.

8. (Original) The method of claim 1, where:

a number of error-correcting code chunks generated is based on the formula ((R-1)*d + R*c), where R is the total number of groups of storage nodes including the local group of storage nodes and the one or more remote groups of storage nodes, d is the number of data chunks, and c is a variable parameter related to a level of redundancy; and

each remote group of storage nodes is allocated (d + c) unique error-correcting code chunks.

9. (Original) A computer-implemented method comprising:

generating a plurality of error-correcting code chunks using a plurality of data chunks, wherein the error-correcting code chunks can be used to reconstruct one or more of the data chunks;

allocating the data chunks to each of two or more groups of storage nodes; and

allocating the error-correcting code chunks between the two or more groups of storage nodes, where:

each group of storage nodes is allocated one or more unique error-correcting code chunks.

10. (Original) The method of claim 9, where:

each group of storage nodes is allocated a same number of error-correcting code chunks.

11. (Currently Amended) The method of claim 9, where:

~~the~~ a number of error-correcting code chunks generated is based on the formula (R*c), where R is the total number of groups of storage nodes, and c is a variable parameter related to a level of redundancy; and

each group of storage nodes is allocated c unique error-correcting code chunks.

12. (Withdrawn) A computer-implemented method comprising:

identifying a damaged chunk of data, where the damaged chunk is associated with a full stripe of d data chunks and one or more error-correcting code chunks, and where the damaged chunk is stored at a first storage node of a first group of storage nodes, and where d is greater than one;

identifying h healthy chunks at the first group of storage nodes, where each of the h healthy chunks is one of the d data chunks or the error-correcting code chunks of the full stripe, where h is less than d, and where h is greater than or equal to zero;

identifying (d – h) healthy chunks among one or more second groups of storage nodes, where each of the second groups of storage nodes is distinct from the first group of storage nodes, and where each of the (d – h) healthy chunks is a unique one of the d data chunks or error-correcting code chunks of the stripe;

reconstructing the damaged chunk using the identified healthy chunks; and

storing the reconstructed chunk in an available storage node.

13. (Withdrawn) The method of claim 12, further comprising:

receiving a request for the damaged chunk.

14. (Withdrawn) The method of claim 12, further comprising:

periodically polling the storage nodes of the first group of storage nodes to determine whether any storage nodes are damaged.

15. (Withdrawn) The method of claim 12, where identifying the damaged chunk of data comprises using an error-detecting code.

16. (Withdrawn) The method of claim 12, where reconstructing the damaged chunk

comprises using a minimum-distance separable (MDS) error-correcting code.

17. (Currently Amended) A computer storage ~~medium~~ device encoded with a computer program, the program comprising instructions that when executed by data processing apparatus cause the data processing apparatus to perform operations comprising:

generating a plurality of error-correcting code chunks from a plurality of data chunks, wherein the error-correcting code chunks can be used to reconstruct one or more of the data chunks;

allocating the data chunks to a local group of storage nodes; and

allocating the error-correcting code chunks between the local group of storage nodes and one or more remote groups of storage nodes, where:

each remote group of storage nodes is allocated one or more unique error-correcting code chunks from the error-correcting code chunks;

any of the error-correcting code chunks not allocated to a remote group of storage nodes are allocated to the local group of storage nodes.

18. (Original) The computer program product of claim 17, where:

each remote group of storage nodes is allocated a same number of the error-correcting code chunks.

19. (Original) The computer program product of claim 17, where:

each data chunk is stored at a distinct storage node of the local group of storage nodes; and

each error-correcting code chunk at each remote group of storage nodes is stored at a distinct storage node of the group of storage nodes.

20. (Original) The computer program product of claim 17, where each error-correcting code chunk and each data chunk is the same size.

21. (Original) The computer program product of claim 17, where each data chunk and each error-correcting code chunk is stored using an error-detecting code so that damaged chunks can

be identified.

22. (Original) The computer program product of claim 17, where generating the error-correcting code chunks includes using a minimum-distance separable (MDS) error-correcting code.

23. (Original) The computer program product of claim 17, where the local group of storage nodes is a first data center and each of the remote groups of storages nodes is a distinct data center.

24. (Original) The computer program product of claim 17, where:

a number of error-correcting code chunks generated is based on the formula ((R-1)*d + R*c), where R is the total number of groups of storage nodes including the local group of storage nodes and the one or more remote groups of storage nodes, d is the number of data chunks, and c is a variable parameter related to a level of redundancy; and

each remote group of storage nodes is allocated (d + c) unique error-correcting code chunks.

25. (Currently Amended) A computer storage ~~medium~~ device encoded with a computer program, the program comprising instructions that when executed by data processing apparatus cause the data processing apparatus to perform operations comprising:

generating a plurality of error-correcting code chunks using a plurality of data chunks, wherein the error-correcting code chunks can be used to reconstruct one or more of the data chunks;

allocating the data chunks to each of two or more groups of storage nodes; and

allocating the error-correcting code chunks between the two or more groups of storage nodes, where:

each group of storage nodes is allocated one or more unique error-correcting code chunks.

26. (Original) The computer program product of claim 25, where:

each group of storage nodes is allocated a same number of error-correcting code chunks.

27. (Original) The computer program product of claim 25, where:

the number of error-correcting code chunks generated is based on the formula (R*c), where R is the total number of groups of storage nodes, and c is a variable parameter related to a level of redundancy; and

each group of storage nodes is allocated c unique error-correcting code chunks.

28. (Withdrawn) A computer storage medium encoded with a computer program, the program comprising instructions that when executed by data processing apparatus cause the data processing apparatus to perform operations comprising:

identifying a damaged chunk of data, where the damaged chunk is associated with a full stripe of d data chunks and one or more error-correcting code chunks, and where the damaged chunk is stored at a first storage node of a first group of storage nodes, and where d is greater than one;

identifying h healthy chunks at the first group of storage nodes, where each of the h healthy chunks is one of the d data chunks or the error-correcting code chunks of the full stripe, where h is less than d, and where h is greater than or equal to zero;

identifying (d – h) healthy chunks among one or more second groups of storage nodes, where each of the second groups of storage nodes is distinct from the first group of storage nodes, and where each of the (d – h) healthy chunks is a unique one of the d data chunks or error-correcting code chunks of the stripe;

reconstructing the damaged chunk using the identified healthy chunks; and

storing the reconstructed chunk in an available storage node.

29. (Withdrawn) The computer program product of claim 28, the operations further comprising:

receiving a request for the damaged chunk.

30. (Withdrawn) The computer program product of claim 28, the operations further

comprising:

periodically polling the storage nodes of the first group of storage nodes to determine whether any storage nodes are damaged.

31. (Withdrawn) The computer program product of claim 28, where identifying the damaged chunk of data comprises using an error-detecting code.

32. (Withdrawn) The computer program product of claim 28, where reconstructing the damaged chunk comprises using a minimum-distance separable (MDS) error-correcting code.

33. (Original) A system comprising a processor and memory configured to interact and perform operations comprising:

generating a plurality of error-correcting code chunks from a plurality of data chunks, wherein the error-correcting code chunks can be used to reconstruct one or more of the data chunks;

allocating the data chunks to a local group of storage nodes; and

allocating the error-correcting code chunks between the local group of storage nodes and one or more remote groups of storage nodes, where:

each remote group of storage nodes is allocated one or more unique error-correcting code chunks from the error-correcting code chunks;

any of the error-correcting code chunks not allocated to a remote group of storage nodes are allocated to the local group of storage nodes.

34. (Original) The system of claim 33, where:

each remote group of storage nodes is allocated a same number of the error-correcting code chunks.

35. (Original) The system of claim 33, where:

each data chunk is stored at a distinct storage node of the local group of storage nodes; and

each error-correcting code chunk at each remote group of storage nodes is stored at a

distinct storage node of the group of storage nodes.

36. (Original) The system of claim 33, where each error-correcting code chunk and each data chunk is the same size.

37. (Original) The system of claim 33, where each data chunk and each error-correcting code chunk is stored using an error-detecting code so that damaged chunks can be identified.

38. (Original) The system of claim 33, where generating the error-correcting code chunks includes using a minimum-distance separable (MDS) error-correcting code.

39. (Original) The system of claim 33, where the local group of storage nodes is a first data center and each of the remote groups of storages nodes is a distinct data center.

40. (Original) The system of claim 33, where:

a number of error-correcting code chunks generated is based on the formula ((R-1)*d + R*c), where R is the total number of groups of storage nodes including the local group of storage nodes and the one or more remote groups of storage nodes, d is the number of data chunks, and c is a variable parameter related to a level of redundancy; and

each remote group of storage nodes is allocated (d + c) unique error-correcting code chunks.

41. (Original) A system comprising a processor and memory configured to interact and perform operations comprising:

generating a plurality of error-correcting code chunks using a plurality of data chunks, wherein the error-correcting code chunks can be used to reconstruct one or more of the data chunks;

allocating the data chunks to each of two or more groups of storage nodes; and

allocating the error-correcting code chunks between the two or more groups of storage nodes, where:

each group of storage nodes is allocated one or more unique error-correcting code

chunks.

42. (Original) The system of claim 41, where:

each group of storage nodes is allocated a same number of error-correcting code chunks.

43. (Original) The system of claim 41, where:

the number of error-correcting code chunks generated is based on the formula (R*c), where R is the total number of groups of storage nodes, and c is a variable parameter related to a level of redundancy; and

each group of storage nodes is allocated c unique error-correcting code chunks.

44. (Withdrawn) A system comprising a processor and memory configured to interact and perform operations comprising:

identifying a damaged chunk of data, where the damaged chunk is associated with a full stripe of d data chunks and one or more error-correcting code chunks, and where the damaged chunk is stored at a first storage node of a first group of storage nodes, and where d is greater than one;

identifying h healthy chunks at the first group of storage nodes, where each of the h healthy chunks is one of the d data chunks or the error-correcting code chunks of the full stripe, where h is less than d, and where h is greater than or equal to zero;

identifying (d – h) healthy chunks among one or more second groups of storage nodes, where each of the second groups of storage nodes is distinct from the first group of storage nodes, and where each of the (d – h) healthy chunks is a unique one of the d data chunks or error-correcting code chunks of the stripe;

reconstructing the damaged chunk using the identified healthy chunks; and

storing the reconstructed chunk in an available storage node.

45. (Withdrawn) The system of claim 44, the operations further comprising:

receiving a request for the damaged chunk.

46. (Withdrawn) The system of claim 44, the operations further comprising:

periodically polling the storage nodes of the first group of storage nodes to determine whether any storage nodes are damaged.

47. (Withdrawn) The system of claim 44, where identifying the damaged chunk of data comprises using an error-detecting code.

48. (Withdrawn) The system of claim 44, where reconstructing the damaged chunk comprises using a minimum-distance separable (MDS) error-correcting code.

REMARKS

The applicant respectfully requests reconsideration of the action in light of the foregoing amendments and the following remarks. Claims 1-48 are pending, with claims 1, 9, 12, 17, 25, 28, 33, 41, and 44 being independent. Claims 12-16, 28-32, and 44-48 have been withdrawn. Claims 11, 17, and 25 have been amended. No new subject matter has been added.

**Restriction Requirement**

The applicant affirms the provisional election without traverse to prosecute claims 1-11, 17-27, and 33-43.

**Claim Rejections - 35 USC § 101**

Claims 17-27 are rejected under 35 U.S.C. § 101 because the claimed invention is allegedly directed to non-statutory subject matter.

Without conceding the propriety of the rejection, the applicant has amended independent claims 17 and 25. The applicant respectfully submits that the rejection should be withdrawn. If the Examiner repeats the rejection, the applicant respectfully requests that the Examiner call the applicant's representative to identify language that would be acceptable.

**Claim Rejections - 35 USC § 112**

Claim 11 is rejected as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. The applicant has amended claim 11 and respectfully submits that the rejection should be withdrawn.

**Claim Rejections - 35 USC § 102**

Claims 1-3, 9-10, 17-19, 25-26, 33-35, and 41-42 were rejected as allegedly anticipated by U.S. Patent Application Publication No. 2003/0149750 ("Franzenburg").

Claim 1. Claim 1 recites "generating a plurality of error-correcting code chunks from a plurality of data chunks … and allocating the error correcting code chunks between the local

group of storage nodes and one or more remote groups of storage nodes." The cited portions of Franzenburg fail to disclose this feature. With respect to the rejection of claim 1, the action states:

> **Franzenburg** teaches a computer-implemented method, a computer storage medium and a system comprising: …
> allocating the error-correcting code chunks between the local group of storage nodes **(Fig. 1, mass storage device 30, which stores parity in the local mass storage device 30)** and one or more remote groups of storage nodes **(Fig. 4, [t]he information created by the parity generator 112 will be stored in a remote networked location. The parity data is stored on a client system that includes a client mass storage device 114, 116, ¶¶** [0041]-[0042]) …. (Office Action at p. 7).

The applicant notes that this is improper for a Section 102 rejection because the Office Action cites a combination of two distinct embodiments of Franzenburg, illustrated in FIG.1 and FIG. 4, for the claimed feature. The Office Action attempts to remedy this deficiency by citing paragraph [0046] of Franzenburg (Office Action at p. 8), which reads as follows:

> An alternative embodiment of the present device can be a combination of FIGS. 1, 3 and 4 or the storage of distributed data on client systems interleaved with parity data as necessary. In a similar manner, redundant data can be stored on client mass storage devices and the interleaved parity data related to that data can be stored on the client systems' mass storage devices. (Franzenburg at [0046]).

The applicant respectfully asserts that the rejection is still not proper under Section 102. Franzenburg at [0046] merely notes what "an alternative … can be," but doesn't explain what that alternative would look like. Section 102 requires that the "identical invention must be shown in as complete detail as is contained in the … claim." (M.P.E.P. § 2131).

More to the point, claim 1 is not obvious in view of the cited portions of Franzenburg. The portion of Franzenburg on which the action relies reads as follows:

> [0041] The original information to be stored is sent from the client systems to the server or the network-attached storage 100. This original information is written on the array's hard disks 104-110 by the storage array controller and then parity information is generated. ***The information created by the parity generator 112 will be stored in a***

> ***remote networked location.*** Creating parity data and storing it in a remote location from the storage array controller and its local hard disks differentiates this embodiment of the invention from other prior art storage arrays. ***Instead of storing the parity information on an additional mass storage device or disk drive that is locally located with the storage array controller, the parity information is recorded on unused storage space that already exists on the network.*** Using this otherwise "vacant" space reduces the cost of the overall storage array.
>
> [0042] The parity data is stored on a client system that includes a client mass storage device 114, 116. The mass storage device within the client system includes a distributed storage file 118, 120 that is configured to store the parity data. Further, the client system's mass storage devices include logic or a communications system that is able to communicate with the storage array controller and transmit or receive the parity data from the storage array controller. (Franzenburg at [0041]-[0042], emphasis added).

This portion of Franzenburg explicitly states that "[i]nstead of storing the parity information on [storage] that is locally located … the parity information is recorded [remotely]." Hence, this portion of Franzenburg, even in view of paragraph [0046] of Franzenburg, fails to teach "allocating the error correcting code chunks between the local group of storage nodes and one or more remote groups of storage nodes" as recited in claim 1.

Even in view of the embodiment of FIG. 1 of Franzenburg, claim 1 is still not obvious. Both the embodiment of FIGS. 1 and 4 of Franzenburg illustrate a single parity bit for a "logically related data group" (Franzenburg at [0025]):




FIG. 1




FIG. 4

The combination of these two embodiments does not teach "generating ***a plurality of error-correcting code chunks*** from a plurality of data chunks … and allocating the error correcting code chunks ***between the local group of storage nodes and one or more remote groups of storage nodes***" as recited in claim 1.

For each of the foregoing reasons, the applicant respectfully submits that the rejection of claim 1 should be withdrawn. Claims 17 and 33 have limitations corresponding to those of claim 1. Claims 2-3, 18-19, and 34-35 depend from the foregoing claims. Therefore, the applicant respectfully submits that the rejection of claims 1-3, 17-19, and 33-35 should be withdrawn.

<u>Claim 9</u>. Claim 9 recites "allocating the data chunks to each of two or more groups of storage nodes; and allocating the error-correcting code chunks between the two or more groups

of storage nodes." The cited portions of Franzenburg fail to disclose this feature. With respect to the rejection of claim 9, the action states:

> **Franzenburg** teaches a computer-implemented method, a computer storage medium and a system comprising: …
> allocating the data chunks to each of two or more groups of storage nodes **(Fig. 1, The storage array controller includes one or more mass storage devices 26, 28, 30 that are linked to and directed by the storage array controller,** ¶ [0022]); and
> allocating the error-correcting code chunks between the two or more groups of storage nodes **(Fig. 1, A Parity-B Parity stored on mass storage device 30)** …. (Office Action at p. 9).

Hence, the action initially cites "mass storage devices" 26, 28, and 30 for the claimed "two or more groups of storage nodes" and then cites "mass storage device" 30, in the singular, for the claimed "two or more groups of storage nodes." As noted above, Section 102 requires that the "identical invention must be shown in as complete detail as is contained in the … claim." (M.P.E.P. § 2131). The action fails to make a proper case of anticipation against claim 9.

The applicant respectfully submits that the rejection of claim 9 should be withdrawn. Claims 25 and 41 have limitations corresponding to those of claim 9. Claims 10, 26, and 42 depend from the foregoing claims. Therefore, the applicant respectfully submits that the rejection of claims 9-10, 25-26, and 41-42 should be withdrawn.

## Claim Rejections - 35 USC § 103

Claims 4-8, 11, 20-24, 27, 36-40 and 43 were rejected as allegedly unpatentable over U.S. Patent Application Publication No. 2003/0149750 ("Franzenburg").

At the outset, the applicant notes that Franzenburg fails to anticipate independent claims 1 and 9, so the action fails to make a *prima facie* case of obviousness against these dependent claims.

Furthermore, the action states:

> The recited limitations of these claims have not been claimed by the applicant as having a patentable distinction or features that would distinguish the device from other devices. Instead, features such as

> *having the data chunks and ECC chunks being the same size, identifying damaged chunks using the ECC, using MDS ECC, which data center the local and remote groups of storage nodes reside and a formula for calculating ECC chunks* appears to be in the realm of design requirements in the practice of sound engineering principles, to distribute data and ECC for that data among storage nodes, rather than a unique circuit feature that would be patentable, and therefore represents a prima facie case of obviousness. These features would be obvious design choices to one skilled in the art with **Franzenburg** before them. (Office Action at p. 10).

The applicant respectfully disagrees. For example, claim 7 recites "a number of error-correcting code chunks generated is based on the formula ((R-1)*d + R*c), where R is the total number of groups of storage nodes including the local group of storage nodes and the one or more remote groups of storage nodes, d is the number of data chunks, and c is a variable parameter related to a level of redundancy; and each remote group of storage nodes is allocated (d + c) unique error correcting code chunks." The cited portions of Franzenburg fail to disclose a "level of redundancy" and the relied upon figures of Franzenburg fail to show more than a single "parity bit" for a "logically related data group." Hence, this claimed feature would not have been obvious in view of Franzenburg.

For each of the foregoing reasons, the applicant respectfully submits that the rejection of claim 4-8, 11, 20-24, 27, 36-40 and 43 should be withdrawn.

## Conclusion

The attorney of record below invites the Examiner to call with any questions regarding this matter to continue to advance prosecution. By responding in the foregoing remarks only to particular positions taken in the action, the applicant does not acquiesce in other positions that have not been explicitly addressed. In addition, the applicant's selecting some particular arguments for the patentability of a claim should not be understood as implying that no other reasons for the patentability of that claim exist. Finally, the applicant's decision to amend or cancel any claim should not be understood as implying that the applicant agrees with any positions taken in the action with respect to that claim or other claims, or that the applicant

adopts any position except as specifically stated in this paper. In particular, by amending or cancelling a claim the applicant does not necessarily concede that the claim prior to amendment or cancellation was unpatentable.

Please extend the period for response to the action dated August 16, 2012, for two months to and including January 16, 2013. The fees in the amount of $570 are being paid concurrently herewith. In addition, please apply any other necessary charges or credits to Deposit Account 06-1050, referencing the above attorney docket number.

Respectfully submitted,

Date: January 16, 2013

/Matthew E. Browning/
Matthew E. Browning
Reg. No. 64,470

Customer Number 26192
Fish & Richardson P.C.
Telephone: (512) 472-5070
Facsimile: (877) 769-7945

11232183.doc