**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CYPRESSWOOD SOLUTIONS LLC,<br>Plaintiff,<br>v.<br>GOOGLE LLC,<br>Defendant. | **Case No. 7:26-cv-00279-DC-DTG**<br>JURY TRIAL DEMANDED |

**PLAINTIFF CYPRESSWOOD SOLUTIONS LLC'S OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6) (DKT. 24)**

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................ 1

II. BACKGROUND ........................................................ 2

A. Pivot3's Interrelated Distributed RAID Applications ........................................................ 2

B. Google Received, and Then Repeatedly Cited, the Pivot3 References ........................................................ 2

C. The FAC's Knowledge, Willful-Blindness, and Willfulness Allegations ........................................................ 3

III. LEGAL STANDARD ........................................................ 4

IV. ARGUMENT ........................................................ 5

A. The FAC Plausibly Alleges Google's Pre-Suit Knowledge of the Asserted Patents ........................................................ 5

1. Google's repeated citations of the Pivot3 References are evidence of knowledge. ........................................................ 6

2. The Pivot3 References pointed Google to the very applications that had already issued as the '909, '624, and '750 patents. ........................................................ 8

3. The cases cited by Google involve general awareness of a patent portfolio, related patents, and foreign counterparts, and are thus inapplicable. ........................................................ 12

4. The FAC plausibly alleges Google's knowledge of the '821 patent. ........................................................ 13

B. The FAC Plausibly Alleges Google's Knowledge of Infringement ........................................................ 14

C. The FAC Plausibly Alleges Willful Blindness in the Alternative ........................................................ 16

D. The FAC Plausibly Alleges Pre-Suit Willful Infringement ........................................................ 18

E. Alternatively, Cypresswood Should Be Granted Leave to Amend ........................................................ 19

V. CONCLUSION ........................................................ 19

## TABLE OF AUTHORITIES

### Cases

*Advanced Integrated Cir. Process LLC v. Taiwan Semiconductor Mfg. Co. Ltd.*,
No. 2:25-CV-00324-JRG, 2026 WL 686956 (E.D. Tex. Mar. 11, 2026) .......... 11, 13

*Advanced Memory Techs., LLC v. Sk Hynix Inc.*,
No. 2:24-CV-01078-JRG-RSP, 2026 WL 873230 (E.D. Tex. Mar. 20, 2026) .......... 10, 15

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .......... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Auth Wallet, LLC v. Amarillo Nat'l Bank*,
No. MO:24-CV-00064-DC, 2025 WL 5291542 (W.D. Tex. Feb. 28, 2025) .......... 4, 19

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*,
No. 2:21-CV-00034-JRG, 2021 WL 12310942 (E.D. Tex. Nov. 18, 2021) .......... 9, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4, 9

*BillJCo, LLC v. Apple Inc.*,
583 F. Supp. 3d 769 (W.D. Tex. 2022) .......... 6, 7

*Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*,
No. 2:15-cv-1274-JRG-RSP, 2016 WL 4778699 (E.D. Tex. Aug. 19, 2016) .......... 11

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
No. 6:13-CV-507, 2015 WL 11118110 (E.D. Tex. Mar. 27, 2015) .......... 15, 18

*Celonis SE v. SAP SE*,
No. 2:25-cv-01037-RWS, Dkt. 79 (E.D. Tex. Sept. 30, 2026) .......... 11

*Densys Ltd. v. Align Tech. Inc.*,
No. CV 25-768-GBW, 2026 WL 1506566 (D. Del. May 29, 2026) .......... 12

*Dialect, LLC v. Bank of Am., N.A.*,
No. 2:24-CV-00207-JRG, 2024 WL 4980794 (E.D. Tex. Dec. 4, 2024) .......... 12

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) .......... 5

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*,
No. CV 14-1430-LPS-CJB, 2015 WL 5725768 (D. Del. Sept. 29, 2015) .......... 9, 11

*EMA Electromechanics, Inc. v. Siemens Corp.*,
No. 6:21-CV-1001-ADA, 2022 WL 1241967 (W.D. Tex. Apr. 26, 2022) .......... 13

*Flypsi, Inc. v. Google LLC*,
No. 6:22-CV-0031-ADA, 2022 WL 3593053 (W.D. Tex. Aug. 22, 2022) .......... 11

*Frac Shack Inc. v. AFD Petroleum (Tex.) Inc.*,
No. 7:19-cv-00026-DC, 2019 WL 3818049 (W.D. Tex. June 13, 2019) .......... 14, 17

*Fujifilm Corp. v. Eastman Kodak Co.*,
No. 2:24-cv-04017-MCA-JSA, 2025 WL 5285604 (D.N.J. Feb. 19, 2025) ............................ 12

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)............................................................................................................ 16

*Iarnach Techs., Ltd. v. Charter Commc'ns, Inc.*,
No. 2:24-cv-00230-JRG, Dkt. 107 (E.D. Tex. Mar. 26, 2025)................................................. 6

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)........................................................................................ 5, 7

*In re S. Scrap Material Co., LLC*,
541 F.3d 584 (5th Cir. 2008) ................................................................................................ 9

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
892 F.3d 719 (5th Cir. 2018) .......................................................................................... 5, 11

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
No. 2:17-CV-00577-JRG, 2019 WL 13535668 (E.D. Tex. Jan. 8, 2019)............................... 18

*Int'l Bus. Machines Corp. v. LzLabs GmbH*,
No. 6:22-CV-00299-ADA, 2023 WL 11916811 (W.D. Tex. Jan. 5, 2023) ............................ 17

*Kirsch Rsch. & Dev., LLC v. Atlas Roofing Corp.*,
No. 5:20-CV-00055-RWS, 2020 WL 8363154 (E.D. Tex. Sept. 29, 2020).............................. 5

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*,
No. 6:20-CV-00318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021).............................. 12

*Lemko Corp. v. Microsoft Corp.*,
No. 3:22-CV-363-L-BT, 2024 WL 3798217 (N.D. Tex. July 29, 2024)................................ 13

*Litton Sys., Inc. v. Honeywell, Inc.*,
140 F.3d 1449 (Fed. Cir. 1998)............................................................................................. 6

*Longhorn Auto. Grp., LLC v. Mitsubishi Motors Corp.*,
No. 2:24-CV-00685-JRG, 2025 WL 3706950 (E.D. Tex. Dec. 22, 2025).............................. 17

*MR Techs. GMBH v. W. Digital Techs., Inc.*,
No. 8:24-CV-01848-JVS-DFM, 2024 WL 5495289 (C.D. Cal. Dec. 5, 2024).......................... 9

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)............................................................................................. 4

*Network Sys. Techs., LLC v. Qualcomm Inc.*,
No. 1:22-CV-01331, 2023 WL 11833572 (W.D. Tex. July 21, 2023).................................... 10

*Network Sys. Techs., LLC v. SK hynix Inc.*,
No. 1:25-CV-1647-ADA, 2026 WL 1920396 (W.D. Tex. July 2, 2026)................................ 19

*Nobelbiz, Inc. v. Insidesales.com, Inc.*,
No. 6:13-CV-360-MHS, 2014 WL 12378804 (E.D. Tex. Oct. 14, 2014) ............................... 13

*Orion Labs Tech, LLC v. Sprinklr, Inc.*,
No. A-25-CV-1100-RP, 2026 WL 653591 (W.D. Tex. Jan. 28, 2026)............................. 17, 18

*Palisade Techs., LLP v. Micron Tech., Inc.*,
No. 7:24-CV-00262-DC-DTG, 2025 WL 5285581 (W.D. Tex. July 24, 2025) ............ 7, 18, 19

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.*,
No. 2:16-CV-1032-JRG, 2017 WL 8727249 (E.D. Tex. Sept. 22, 2017) ................................. 6

*RFCyber Corp. v. Apple Inc.*,
No. 6:21-CV-00916-ADA, 2022 WL 22891200 (W.D. Tex. Sept. 12, 2022) ..................... 7, 19

*Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*,
983 F. Supp. 2d 700 (E.D. Va. 2013) ........................................................................... 9

*VoIP-Pal.com, Inc. v. Facebook, Inc.*,
No. 6:21-CV-00665-ADA, 2022 WL 1394550 (W.D. Tex. May 3, 2022) ............................. 14

**Rules and Regulations**

37 C.F.R. § 1.56 ............................................................................................................ 3, 7

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 4

Fed. R. Civ. P. 15(a)(2)..................................................................................................... 19

**Other Authorities**

MPEP § 609 ...................................................................................................................... 7

# TABLE OF ABBREVIATIONS

| **Term** | **Description** |
|---|---|
| ’066 application | Google’s Application No. 12/748,066 |
| ’247 patent | U.S. Patent No. 8,176,247 |
| ’383 publication | U.S. Patent Application Publication No. 2012/0131383 |
| ’393 patent | U.S. Patent No. 8,082,393 |
| ’536 patent | U.S. Patent No. 8,484,536 |
| ’624 patent | U.S. Patent No. 8,239,624 |
| ’750 patent | U.S. Patent No. 8,219,750 |
| ’753 patent | U.S. Patent No. 8,140,753 |
| ’821 patent | U.S. Patent No. 9,086,821 |
| ’909 patent | U.S. Patent No. 8,090,909 |
| Asserted Patents | The ’624, ’750, ’821, and ’909 Patents |
| Cypresswood | Plaintiff Cypresswood Solutions LLC |
| FAC | First Amended Complaint |
| Google | Defendant Google LLC |
| Pivot3 | Pivot3, Inc. |
| Pivot3 References | The ’393, ’753, and ’247 patents and the ’383 publication |

## I. INTRODUCTION

Google's motion to dismiss Cypresswood's pre-suit indirect and willful infringement claims should be denied. The First Amended Complaint alleges that in August 2012, the Patent Office notified Google of four Pivot3 patent references "pertinent to" one of Google's own distributed-storage patent applications in the same technological field as the patents in this case. Shortly after responding to that Office Action, Google itself submitted those same four Pivot3 patent references to the Patent Office in seven more of its distributed-storage applications, and asked the examiner in each to consider them. Those references are not a generic patent portfolio. Each one identifies, by serial number and title, the applications that issued as the asserted '909 and '624 patents and incorporates them by reference, and three of them list on their faces the Notice of Allowance in the '909 application and Office Actions in the prosecution of the asserted '624 and '750 patents. And by the time the Patent Office sent those references to Google, every one of the identified applications had already issued as an Asserted Patent. These specific factual allegations (and others), taken as true and with reasonable inferences drawn in Cypresswood's favor, make it plausible that Google knew of the Asserted Patents long before this suit. The FAC also ties Google's own distributed-storage patents and products to the same redundancy-based distributed storage architecture accused here, plausibly pleading Google's knowledge of infringement.

Google's attempts to disclaim knowledge of the references it repeatedly cited in its own applications—characterizing its prosecution conduct as "routine Patent Office activities," and asserting that outside counsel merely "repackaged" the references provided by the examiner—improperly ask this Court to draw inferences in *Google's* favor. These arguments at best present factual disputes that cannot be resolved on the pleadings. Google's motion should be denied.

## II. BACKGROUND

### A. Pivot3's Interrelated Distributed RAID Applications

The Asserted Patents were developed by Austin-based Pivot3, Inc. and inventors William Galloway, Ryan Callison, and others. FAC ¶¶ 3, 13. In June 2009, Pivot3 filed a group of related non-provisional applications, including Application No. 12/479,319 (issued as the '909 patent on January 3, 2012), Application No. 12/479,360 (issued as the '624 patent on August 7, 2012), and Application No. 12/479,434 (issued as U.S. Patent No. 8,082,393, with a continuation issued as U.S. Patent No. 8,140,753). *Id.* ¶ 14. Pivot3 also filed Application No. 12/490,810, which issued as the '750 patent on July 10, 2012—from which the '821 patent descends—and Application No. 12/490,916, which issued as U.S. Patent No. 8,176,247 and whose continuation published as U.S. Patent Application Publication No. 2012/0131383. *Id.* ¶ 15.[1]

The '393, '753, and '247 patents and the '383 publication (the "Pivot3 References") each state that it "is related to" Application Nos. 12/479,319 (the '909 application) and 12/479,360 (the '624 application)—identified by serial number and title—which are "incorporated fully herein by reference." *Id.* ¶ 16 & Exs. 17–20. The faces of the '393, '753, and '247 patents also list the Notice of Allowance issued in the '909 application, Office Actions in the '909 and '624 applications, and an Office Action in the '750 application. *Id.* ¶ 17 & Exs. 17–19. The cross-references run both ways: the '750 and '821 patents incorporate the '909, '624, '393, and '247 applications, and the '750 patent lists the '909 and '753 patents among its references. *Id.* ¶ 18 & Exs. 2, 4.

### B. Google Received, and Then Repeatedly Cited, the Pivot3 References

Beginning in 2010, Google filed a series of patent applications directed to distributed-storage technology. *Id.* ¶ 19. At least eight issued as the "Google Storage Patents." *Id.* In Google's

[1] Hereafter, each application is referenced by the patent that issued from it (e.g., the "'909 application" refers to Application No. 12/479,319, which issued as the '909 patent).

Application No. 12/748,066, the examiner's August 16, 2012 Office Action attached a Notice of References Cited listing all four Pivot3 References and stated that "[t]he prior art made of record and not relied upon is considered pertinent to applicant's disclosure." *Id.* ¶ 20 & Ex. 21 at 14–15. Google responded to that Office Action on January 16, 2013. *Id.* ¶ 20. On July 9, 2013, Google's '536 patent issued, listing all four Pivot3 References on its face. *Id.*

Google then cited the Pivot3 References itself. Between February 14 and March 26, 2013, Google filed Information Disclosure Statements (IDS) in seven other applications that issued as Google Storage Patents, each listing all four Pivot3 References and asking the examiner to consider them. *Id.* ¶ 21. Five of the accompanying transmittal letters state that the cited documents "may be material pursuant to 37 C.F.R. § 1.56." *Id.* Those seven Google Storage Patents, which issued between December 2013 and October 2014, list the Pivot3 References on their faces as cited by the *applicant* (Google), rather than the examiner. *Id.* "Google thus affirmatively submitted the Pivot3 References to the PTO for consideration in the examination of its own distributed storage applications in at least seven separate applications." *Id.* And as alleged in the FAC, "Google's repeated citation of the same Pivot3 References across at least seven separate applications shows that Google was actually aware of Pivot3's distributed RAID patent family." *Id.* ¶ 22.

Google, a "sophisticated owner and prosecutor of patents," also operates the Google Patents service. *Id.* ¶ 23. And its own Google Patents pages for the '909 and '624 patents—which Google attached to its first motion to dismiss (Dkt. 11)—identify Google Storage Patents as "Family To Family Citations" of those patents. FAC ¶ 23 (citing Dkt. 11-2, Dkt. 11-3).

### C. The FAC's Knowledge, Willful-Blindness, and Willfulness Allegations

The FAC alleges specific facts supporting that Google reviewed the Pivot3 References in citing them in its own patent applications, thereby learning that Pivot3 had filed the '909 and '624 applications, that those applications were incorporated into the references Google was citing, that

the ’909 application had been allowed, and that the PTO had acted on the ’624 and ’750 applications; that each of those applications had already issued as an Asserted Patent by the time the PTO sent the Pivot3 References to Google on August 16, 2012; and that Google investigated the identified applications and learned of the ’909, ’624, and ’750 patents. *Id.* ¶¶ 24–27. The FAC further alleges specific facts supporting that Google, having repeatedly cited Pivot3’s distributed RAID patent family, monitored it and learned of the ’821 patent upon or shortly after issuance in July 2015. *Id.* ¶ 28.

The FAC pleads willful blindness in the alternative, and alleges that the Google Storage Patents and the accused Colossus and Hyperdisk systems address related problems and use the same teachings as the Pivot3 disclosures, that Google’s engineers and patent personnel evaluated those disclosures against Google’s own systems, and that Google continued its infringing conduct with that knowledge, or was at least willfully blind to that knowledge. *Id.* ¶¶ 29–32; *see also id.* ¶¶ 47–49, 58–60, 69–71, 80–82.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the court “must accept well-pleaded facts, view the case most favorable to the non-movant, and draw reasonable inferences in the nonmovant’s favor.” *Auth Wallet, LLC v. Amarillo Nat’l Bank*, No. MO:24-CV-00064-DC, 2025 WL 5291542, at *1 (W.D. Tex. Feb. 28, 2025). In determining whether dismissal is appropriate, the court’s task is simply to assess whether the complaint has pled enough facts to “state a claim to relief that is plausible on its face.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is not probability: “a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.” *Twombly*, 550 U.S. at 556. And the Federal Circuit has made clear that a patent plaintiff “need not prove its case at the pleading stage.” *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (cleaned

up); *see also In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). A complaint need only "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

"[A] court [may not] choose among competing inferences ... [if] there are sufficient facts alleged to render the nonmovant's asserted inferences plausible." *Bill of Lading*, 681 F.3d at 1340. And where, as here, the relevant information is peculiarly within defendant's possession and control, "it is not necessarily the plaintiff's responsibility to provide that information in [its] complaint." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). "On information and belief" allegations are permitted if there are sufficient allegations to show that the plaintiff is not merely engaged in a "fishing expedition." *Id.*

## IV. ARGUMENT

### A. The FAC Plausibly Alleges Google's Pre-Suit Knowledge of the Asserted Patents

Google's motion improperly asks the Court to analyze individual allegations in isolation, consider facts outside the pleadings, draw every inference and resolve fact issues in *Google's* favor, and require proof of Google's knowledge before discovery. But on a motion to dismiss, "the Court must take all of [Cypresswood's] factual allegations together, assume they are true and view them in the light most favorable to [Cypresswood]." *Kirsch Rsch. & Dev., LLC v. Atlas Roofing Corp.*, No. 5:20-CV-00055-RWS, 2020 WL 8363154, at *4 (E.D. Tex. Sept. 29, 2020). When properly viewed in this manner, the detailed factual allegations of the complaint plausibly support that Google gained knowledge of the asserted patents several years before this case was filed. Nothing more is required at this stage.

### 1. Google's repeated citations of the Pivot3 References are evidence of knowledge.

Google attempts to downplay its own repeated citations of the Pivot3 References by characterizing them as "routine Patent Office filing activity." Mot. at 3. But the fact that these filings may have been "routine" is irrelevant. As one court explained in a case involving Google's own prosecution citations, "the prosecution history is objective evidence of what knowledge the applicant has of the art." *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-CV-1032-JRG, 2017 WL 8727249, at *5 (E.D. Tex. Sept. 22, 2017) (quoting *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1465 (Fed. Cir. 1998)). It would "make little sense to say that it is implausible" that Google had knowledge of a patent it "affirmatively cited ... to the U.S. Patent and Trademark Office during patent prosecution." *Id.* The same reasoning applies here. Google's citation of the Pivot3 References in prosecuting its own patents is objective evidence that Google had knowledge of this relevant art, the weight of which "is a question not properly addressed in a Rule 12(b)(6)." *Id.*; *see also BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 776 (W.D. Tex. 2022) (examiner's citation of the asserted patent during prosecution of Apple's patents "supports the inference that Apple knew of the '267 patent before the Complaint"); *Iarnach Techs., Ltd. v. Charter Commc'ns, Inc.*, No. 2:24-cv-00230-JRG, Dkt. 107 at 10 (E.D. Tex. Mar. 26, 2025) (allegation that defendant cited the asserted patent during prosecution "is sufficient to allow the Court to reasonably infer that Defendant knew of the" patent).

Google's assertion that its "outside patent counsel simply repackaged" the examiner's set of references (Mot. at 7) fails for multiple reasons. *First*, *Plano* rejected a similar argument, explaining that Google "engaged an agent to file a patent application on its behalf with citations to prior art that *Google* is deemed to be aware of." 2017 WL 8727249, at *6. And in *BillJCo*, the court found that an *examiner's* citation supported an inference that the *applicant* had knowledge

of the cited patent. 583 F. Supp. 3d at 776. That the Pivot3 References were first cited by the examiner is thus immaterial. Google is deemed to have knowledge of all references cited by itself *and* the examiner during the prosecution of its patents.

*Second*, 37 C.F.R. § 1.56(a) imposes a duty on anyone associated with the prosecution of a patent application to disclose "all information known to that individual to be material to patentability." Google's IDS filings in seven applications, and the accompanying transmittal letters stating the references "may be material pursuant to 37 C.F.R. § 1.56" (FAC ¶ 21), make it plausible that persons acting for Google knew of and considered the Pivot3 References. *See* FAC ¶ 22. Google's reliance on MPEP § 609's statement that an IDS is not an admission of *materiality* (Mot. at 7) is beside the point. The question here is *knowledge*, and Google could not have cited a reference (material or not) it did not know about.

*Third*, the degree of Google's engagement with the Pivot3 References is a quintessential factual dispute. Google's characterization is, at most, a competing inference, and the Court may not "choose among competing inferences" at the pleading stage. *Bill of Lading*, 681 F.3d at 1340. Nor does Google's observation regarding the number of patents and applications listing Google as an assignee (Mot. at 2 n.1) change anything. As an initial matter, Google's attempt to introduce outside evidence is improper. Google cites no authority for the proposition that internet search results constitute "matters of public record" of which the Court may take judicial notice on a motion to dismiss. And regardless, Google cannot, as a matter of law, claim ignorance of the contents of its own prosecution filings simply because there are a lot of them. Google's duty of candor and good faith applies to each and every patent application.

Unlike the *Palisade* and *RFCyber* cases Google relies on, the FAC does not merely allege a one-off examiner citation in an unrelated application. The PTO cited the references as "pertinent to applicant's disclosure" in one Google application concerning similar distributed storage

technology, Google responded to that Office Action, and, within weeks, Google submitted the same references in *seven* more applications by the same inventor on the same technology. FAC ¶¶ 19–21. This plausibly supports Google's knowledge of the Pivot3 References, which themselves explicitly identify and incorporate the related '909 and '624 applications, the Notice of Allowance in the '909 application, and Office Actions in the '909, '624, and '750 applications.

**2. The Pivot3 References pointed Google to the very applications that had already issued as the '909, '624, and '750 patents.**

Google's argument that "mere citation to non-asserted patents, or general reference to a patent portfolio" cannot establish knowledge of an asserted patent (Mot. at 6) mischaracterizes the FAC. The Pivot3 References are not merely unrelated patents that happen to share an assignee with the Asserted Patents—they are all interrelated and cross-reference each other. Each of the Pivot3 References names the applications that issued as the '909 and '624 patents by serial number and title and incorporates them "fully herein by reference," and three of the Pivot3 References list on their faces Office Actions in the '909, '624, and '750 applications and the Notice of Allowance in the '909 application. FAC ¶¶ 16–17. The '750 and '821 patents also refer to and incorporate the applications underlying the Pivot3 References that Google was citing. *Id.* ¶ 18. "The Asserted Patents and the Pivot3 References thus form a body of Pivot3 distributed RAID disclosures, filed and prosecuted contemporaneously and naming overlapping inventors and the same assignee." *Id.* It is reasonable to infer that Google investigated the references that Google itself repeatedly cited, *including* the Pivot3 References,[2] as well as the expressly identified and incorporated '909, '624, and '750 applications, all of which are related and concern similar technology as the Google Storage Patents. This is not a "baseless conspiracy theory," as Google contends. Mot. at 7. It is an

[2] Contrary to Google's assertions, nothing in the FAC suggests that Google focused only on the four Pivot3 References. Google had knowledge of the entire list of examiner-cited references, which include the Pivot3 References.

inference supported by specific factual allegations and documentary evidence that courts routinely find plausible. At the very least, these allegations raise a reasonable expectation that discovery will reveal evidence to further support Cypresswood's claims, which is all that is required at this stage. *See In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

For example, in *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 700 (E.D. Va. 2013), the court held it is "reasonable to infer that Samsung would, in its prosecution seeking a valid and enforceable patent, investigate references cited by the patent examiner as relevant to their patent application." *Id.* at 712. The court found that Samsung had pre-suit knowledge of the '398 patent cited in the Notice of Allowability issued on Samsung's application, and that "pre-suit knowledge of the '398 patent would have led to knowledge of the '733 patent as it is listed in the Related U.S. Application Data section on the first page of the '398 patent." *Id.* The defendant, for purposes of the motion to dismiss, was deemed to have knowledge of not only the patents cited by the examiner during prosecution, but also related patents listed on the face of the examiner-cited patents. *Id.*; *see also Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, No. 2:21-CV-00034-JRG, 2021 WL 12310942, at *3 (E.D. Tex. Nov. 18, 2021) (allegations including defendant's citation of parent application during prosecution of its own patent plausibly showed knowledge of continuations sharing the same specification); *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, No. CV 14-1430-LPS-CJB, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015) (allegations that defendants were made aware of the parent to the asserted patent, and that defendants subsequently cited other of plaintiff's patents in the same family in prosecuting defendants' own patents, plausibly supported pre-suit knowledge); *MR Techs. GMBH v. W. Digital Techs., Inc.*, No. 8:24-CV-01848-JVS-DFM, 2024 WL 5495289, at *5 (C.D. Cal. Dec. 5, 2024) (defendant's knowledge of the parent patent, *inter alia*, plausibly supported pre-suit knowledge).

Google's assertion that the incorporated applications "are not issued patents with enforceable claims" (Mot. at 8) also fails. The cited applications issued as the asserted '909, '624, and '750 patents *before* the PTO first sent the references to Google in August 2012. FAC ¶¶ 24–26. Thus, there was no need for Google to monitor anything. And as alleged in the FAC, Google is a sophisticated patentee that operates its own patent search service, and actually engaged with this specific Pivot3 patent family in prosecuting its own patents concerning similar technology over more than two years. *Id.* ¶¶ 20–23, 28. Indeed, the Google Patents pages for the '909 and '624 patents, attached as exhibits to Google's first motion to dismiss, identify Google Storage Patents as "Family To Family Citations" of these asserted patents. *Id.* ¶ 23 (citing Dkt. 11-2, Dkt. 11-3). Even performing the bare minimum diligence and pulling up the patent applications named on the faces of the Pivot3 References would have revealed that the applications had already issued as patents. It is not unreasonable to infer that Google, in pursuing a valid and enforceable patent, performed at least a minimal investigation of these highly relevant applications.

Indeed, courts routinely hold that a defendant's *or examiner's* citation of an application that already issued as a patent at the time of the citation—or even just an allowed but not-yet-issued application—is sufficient to support pre-suit knowledge of the issued patent. For example, in *Network Sys. Techs., LLC v. Qualcomm Inc.*, No. 1:22-CV-01331, 2023 WL 11833572 (W.D. Tex. July 21, 2023), the plaintiff alleged that after the asserted patent issued, its publication was cited by defendant during prosecution of its own patent application. The court explained that it "must resolve this factual dispute in favor of" plaintiff, and found that defendant "reasonably would have investigated this reference and gained knowledge of the notice of allowance." *Id.* at *8; *see also Advanced Memory Techs., LLC v. Sk Hynix Inc.*, No. 2:24-CV-01078-JRG-RSP, 2026 WL 873230, at *4 (E.D. Tex. Mar. 20, 2026) (allegations that defendant gained pre-suit knowledge from allowed patent applications cited by the examiner during prosecution of defendant's patents

"suffices at the pleadings stage"); *Celonis SE v. SAP SE*, No. 2:25-cv-01037-RWS, Dkt. 79 at 11–12 (E.D. Tex. Sept. 30, 2026) (finding it "plausible to infer an investigation of the '114 application would lead to the discovery it had already issued as the '708 Patent"); *Advanced Integrated Cir. Process LLC v. Taiwan Semiconductor Mfg. Co. Ltd.*, No. 2:25-CV-00324-JRG, 2026 WL 686956, at *2–3 (E.D. Tex. Mar. 11, 2026) (examiner's citation of an allowed application during the prosecution of defendant's patent application sufficient to support defendant's pre-suit knowledge of the issued patent—"it is plausible to infer that a defendant became aware of a patent through its investigation of that patent's corresponding application or publication"); *Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, No. 2:15-cv-1274-JRG-RSP, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016) (defendant's citation to application plausibly supported pre-suit knowledge of the patent that had issued from that application a year earlier).

Google's cases do not hold otherwise. Indeed, the *Flypsi* case cited by Google rejects a *per se* rule against knowledge of the patents based on patent filings, and acknowledges that "a party's exposure to a patent application may give rise to knowledge of a later issued patent." *Flypsi, Inc. v. Google LLC*, No. 6:22-CV-0031-ADA, 2022 WL 3593053, at *5 (W.D. Tex. Aug. 22, 2022). In that case, unlike here, the pre-suit knowledge allegations were found deficient because they did not allege *Google's* awareness of the patent filings, but rather were based on the alleged awareness of a third party. Here, Google cited the Pivot3 References itself, and the FAC alleges Google's actual knowledge (and alternatively, willful blindness). FAC ¶¶ 24–29.

To the extent Google disputes the truth of the FAC's allegations or the inferences drawn therefrom, this at best creates fact issues inappropriate for resolution on the pleadings. Facts regarding Google's internal tracking of the Pivot3 RAID family are peculiarly within Google's possession (*id.* ¶ 33) and need not be pleaded in greater detail before discovery. *Innova*, 892 F.3d at 730; *Elm 3DS*, 2015 WL 5725768, at *3 (noting that it was "certainly possible" Defendants

lacked actual knowledge of the asserted patent despite being aware of its parent and siblings, as Defendants "had no affirmative duty" to monitor these patents, but that the facts, taken as true, made pre-suit knowledge at least plausible).

### 3. The cases cited by Google involve general awareness of a patent portfolio, related patents, and foreign counterparts, and are thus inapplicable.

Google's other cases are also easily distinguishable. The "portfolio" cases involved only vague or generalized awareness that a plaintiff had patents. *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*, No. 6:20-CV-00318-ADA, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (complaint "vague as to the nature and content" of a conversation about plaintiff's patented products which at best supported only "general knowledge of a patent portfolio"); *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *4, *6 (W.D. Tex. May 12, 2014) (allegations that *other* parties, not defendant, cited patents in the same family and that plaintiff had previously sued defendant for infringement of "similar patents").

Google's family-citation cases likewise concern far more attenuated connections. *See, e.g.*, *Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-CV-00207-JRG, 2024 WL 4980794, at *2 (E.D. Tex. Dec. 4, 2024) (one defendant application cited a parent publication that did not issue as an asserted patent, plus a presentation discussing *prior* patent owner's patent portfolio, which at the time did not include the asserted patents); *Densys Ltd. v. Align Tech. Inc.*, No. CV 25-768-GBW, 2026 WL 1506566, at *14 (D. Del. May 29, 2026) (citation of a related patent sharing a specification and a Spanish counterpart); *Fujifilm Corp. v. Eastman Kodak Co.*, No. 2:24-cv-04017-MCA-JSA, 2025 WL 5285604, at *2 (D.N.J. Feb. 19, 2025) (citation of a European counterpart). In none of those cases (1) did the cited references identify the asserted application, incorporate it by reference, or report its allowance; (2) had the identified applications already issued; or (3) had the defendant itself cited the reference across seven applications concerning related technology. *Advanced*

*Integrated Circuit* confirms this distinction: the court denied dismissal as to the patents whose own applications or publications were cited, and granted it only as to a patent where the cited publication "does not correspond" to it. 2026 WL 686956, at *2–3. Here, the Pivot3 References *do* correspond to the Asserted Patents—they name and incorporate the applications that issued as the Asserted Patents.

Google's other authorities are also inapplicable. *EMA Electromechanics, Inc. v. Siemens Corp.* involved a bare allegation that the defendant "had actual knowledge" of the patent, with no supporting facts. No. 6:21-CV-1001-ADA, 2022 WL 1241967, at *5 (W.D. Tex. Apr. 26, 2022). In *Nobelbiz, Inc. v. Insidesales.com, Inc.*, the plaintiff alleged only that the defendant "knew or should have known" of the patents because plaintiff's competing service embodying those patents received an award. No. 6:13-CV-360-MHS, 2014 WL 12378804, at *3 (E.D. Tex. Oct. 14, 2014). But at the time of the award, the patents had not yet issued. *Id.* And in *Lemko Corp. v. Microsoft Corp.*, the court found that the "existence of patent-marked products *by itself*" was insufficient to support actual knowledge of the patent. No. 3:22-CV-363-L-BT, 2024 WL 3798217, at *7 (N.D. Tex. July 29, 2024) (emphasis added). Here, the FAC's marking allegations do not stand alone, but rather are additional facts supporting Google's knowledge or willful blindness. FAC ¶ 29.

**4. The FAC plausibly alleges Google's knowledge of the '821 patent.**

The '821 patent is a continuation in the '750 patent's family, shares the '750 patent's inventors and specification, and identifies the '750 application on its face. *Id.* ¶¶ 15, 28. The '821 application published in August 2013 (while Google's own applications citing the Pivot3 References were still pending) and issued in July 2015. *Id.* ¶¶ 21, 28. Google, who was made aware of the Pivot3 RAID family in August 2012, affirmatively cited multiple applications from this family to the Patent Office in seven of its own applications, and continued to prosecute applications citing the Pivot3 References through October 2014, plausibly monitored that family and learned

of the ’821 patent upon or shortly after its issuance. *Id.* ¶ 28. *See VoIP-Pal.com, Inc. v. Facebook, Inc.*, No. 6:21-CV-00665-ADA, 2022 WL 1394550, at *3 (W.D. Tex. May 3, 2022) (finding pre-suit knowledge based on notice letter identifying application “in further combination with monitoring of that patent application, resulting in knowledge of the ’721 Patent on or after the issuance date”); *Barkan*, 2021 WL 12310942, at *3 (citation of parent application supported knowledge of continuations sharing the same specification).

While it may be true that a party has no duty to monitor every application of which it is aware, the FAC does not rest on any such obligation. It alleges, *inter alia*, that a sophisticated patentee that operates its own patent search service actually engaged with this specific family in prosecuting its own patents related to the same technology several times over more than two years. FAC ¶¶ 20–23, 28. Courts in this District have credited allegations of monitoring where, as here, they are supported by specific facts indicating that it would have been reasonable to do so under the circumstances. *See, e.g.*, *Frac Shack Inc. v. AFD Petroleum (Tex.) Inc.*, No. 7:19-cv-00026-DC, 2019 WL 3818049, at *5 (W.D. Tex. June 13, 2019) (“it is certainly a reasonable inference that Defendants were monitoring the progress of the application”); *VoIP-Pal*, 2022 WL 1394550, at *3. At a minimum, these facts support willful blindness, as discussed below.

**B. The FAC Plausibly Alleges Google’s Knowledge of Infringement**

Google’s assertion that the FAC pleads nothing connecting its knowledge of the patents to knowledge of infringement is wrong. The FAC alleges that the Google Storage Patents and the Accused Instrumentalities “address the same problem and use the same core approach” as the Pivot3 References and the Asserted Patents: “storing data together with redundancy information (such as parity or error-correcting code chunks) across multiple independent storage nodes so that data remains available and can be rebuilt when a node fails.” FAC ¶ 30. Google’s own ’536 patent describes “generating a plurality of error-correcting code chunks from a plurality of data chunks”

and allocating them across groups of storage nodes, and Google's Colossus system implements distributed RAID through erasure coding and/or replication, storing segments and their redundancy segments on different storage servers. *Id.* (citing Exs. 5–9).

The FAC further alleges that Google's engineers and patent personnel evaluated the Pivot3 disclosures against Google's own techniques when Google identified those references as relevant to its distributed-storage applications, and that Google, with full knowledge of the architecture of its own Colossus and Hyperdisk systems, knew, or was at least willfully blind to the high probability, that those systems practice the claimed methods. *Id.* ¶ 31. Despite that knowledge, Google continued to provide and promote those systems to its customers. *Id.* ¶ 32.

These specific factual allegations, taken as true, are more than sufficient to support Google's knowledge of infringement. Indeed, courts have held that where a plaintiff plausibly pleads knowledge of the patents, as Cypresswood has done here, "it follows … that Defendants plausibly knew their customers and end users directly infringe the patented claims when they use the accused devices as expected." *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-CV-507, 2015 WL 11118110, at *4 (E.D. Tex. Mar. 27, 2015); *Advanced Memory*, 2026 WL 873230, at *5 ("At the pleadings stage, such knowledge [of the asserted patents] raises a plausible inference of knowing indirect infringement."). The FAC pleads far more than knowledge of the asserted patents. The allegations show that Google knew the relevance of Pivot3's RAID technology on the distributed-storage technology Google was developing and deploying. FAC ¶¶ 20–22, 29–31. Google's observation that the examiner did not reject Google's claims over the Pivot3 References (Mot. at 11) misses the point. That argument relates to the validity of Google's patents, which is unrelated to the issue of whether Google knew its *products infringe* the Asserted Patents.

Google's suggestion that the FAC's allegations are conclusory simply because they are pleaded "on information and belief" (Mot. at 11) is unfounded. Pleading "on information and

belief" is standard pleading practice and is particularly appropriate where direct evidence is unavailable. For example, Cypresswood does not have—and could not have—firsthand knowledge of Google's internal patent practices. Only Google has this information. But the specific facts and circumstances alleged plausibly support Google's pre-suit knowledge. *See Innova*, 892 F.3d at 730 (the plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible") (cleaned up). To the extent Google disagrees with these inferences, this at best creates a disputed issue of fact. Cypresswood is not required to offer evidence and prove its case at this stage.

Google's suggestion that a pre-suit notice letter is required to support knowledge of infringement (Mot. at 10) is also unsupported. None of the cases Google cites establishes such a bright-line rule.

**C. The FAC Plausibly Alleges Willful Blindness in the Alternative**

The FAC also pleads the elements of willful blindness with supporting facts. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (willful blindness requires "(1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.").

As to subjective belief, the FAC alleges Google had knowledge of the Pivot3 References, which identify and incorporate the '909 and '624 applications, and list the Notice of Allowance in the '909 application and an Office Action in the '750 application; that Google deemed those references relevant enough to its own distributed-storage patenting to cite them in seven of its own applications; and that Pivot3 marked its products with its patent numbers. FAC ¶ 29. Google thus believed "there was a high probability that the Pivot3 applications identified in the Pivot3 References had issued as patents covering Pivot3's distributed RAID technology." *Id.* And despite

this belief, Google repeatedly reproduced the Pivot3 References in its own submissions to secure its own patents, and either knew of the Asserted Patents and its infringement, or deliberately refrained from reviewing the issued patents that those same references identified in order to "avoid confirming the existence and scope of the Asserted Patents." *Id.* The FAC further alleges that Google maintains a policy or practice of not reviewing the patents of others, including Pivot3's, for potential infringement. *Id.* Otherwise, Google would have learned of the Asserted Patents and its infringement. These allegations plausibly support willful blindness. *See, e.g.*, *Longhorn Auto. Grp., LLC v. Mitsubishi Motors Corp.*, No. 2:24-CV-00685-JRG, 2025 WL 3706950, at *4 (E.D. Tex. Dec. 22, 2025) ("allegation that Defendant has a policy of ignoring third-party patents and believes that it likely would learn of patent infringement upon review of those patents is sufficient to allege willful blindness"); Frac Shack I, 2019 WL 3818049, at *5–6 (finding willful blindness plausible where the facts supported a reasonable inference that defendant was monitoring the patent application); *Int'l Bus. Machines Corp. v. LzLabs GmbH*, No. 6:22-CV-00299-ADA, 2023 WL 11916811, at *3 (W.D. Tex. Jan. 5, 2023) (defendant's refusal to comply with audit and cancellation of a customer meeting that would have revealed the existence of the asserted patents plausibly supported willful blindness).

As discussed above, Google's cited cases holding general awareness of a patent portfolio or a related application insufficient are inapposite. *See* Mot. at 12. The FAC pleads specific facts that go far beyond general awareness of Pivot3's portfolio and related applications—the FAC pleads knowledge of the *asserted patents'* applications themselves. And unlike *Orion Labs Tech, LLC v. Sprinklr, Inc.*, where the plaintiff alleged only that defendant "has a policy of willful blindness to other's patent rights," No. A-25-CV-1100-RP, 2026 WL 653591, at *5 (W.D. Tex. Jan. 28, 2026), Cypresswood's willful-blindness allegations are supported by specific facts relating to Google's prosecution conduct. FAC ¶ 29.

### D. The FAC Plausibly Alleges Pre-Suit Willful Infringement

Google's pre-suit willful infringement argument rises and falls with its pre-suit knowledge argument. *See* Mot. at 14 (arguing willfulness fails "for substantially the same reasons"). Because the FAC plausibly alleges Google's pre-suit knowledge of the Asserted Patents and of its infringement (or, at minimum, willful blindness), it plausibly alleges pre-suit willfulness. The FAC alleges that Google has known of the '909, '750, and '624 patents since 2012–2013, and of the '821 patent since 2015, and nonetheless continued, for more than a decade, to make, use, sell, and offer the accused services, "deliberately and intentionally infringing." FAC ¶¶ 26, 28, 47, 49, 58, 60, 69, 71, 80, 82. These allegations are sufficient to support willfulness, as the "plaintiff is not required to demonstrate egregious conduct at the pleading stage." *Palisade Techs., LLP v. Micron Tech., Inc.*, No. 7:24-CV-00262-DC-DTG, 2025 WL 5285581, at *3 (W.D. Tex. July 24, 2025).

Google's cited authorities do not hold otherwise. *Palisade*, *Network System Technologies*, and *Orion* turned on the absence of plausible pre-suit knowledge (a single examiner citation of a not-yet-issued patent in *Palisade*, allegations premised on litigation against a different company in *Network System Technologies*, and a bare allegation of a policy of willful blindness in *Orion*). And in *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, the court found, on *summary judgment* and a developed record, that knowledge of the patent family alone was insufficient to support willful infringement. No. 2:17-CV-00577-JRG, 2019 WL 13535668, at *1 (E.D. Tex. Jan. 8, 2019); *cf. Cellular Commc'ns*, 2015 WL 11118110, at *4 (finding plaintiff's allegations of pre-suit knowledge, while "not robust," sufficient to support plausibility and noting that defendants "may re-raise the issue of pre-suit knowledge in a motion for summary judgment after adequate time for discovery").

Finally, Google's assertion that Pivot3 or Cypresswood "could have notified Google long before filing this lawsuit" (Mot. at 15) is a *non sequitur*. Willfulness turns on the infringer's

subjective state of mind, and the FAC pleads facts making Google's knowledge of the Asserted Patents and its infringement plausible.

### E. Alternatively, Cypresswood Should Be Granted Leave to Amend

If the Court finds any aspect of the FAC insufficient, Cypresswood respectfully requests leave to amend. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Auth Wallet*, 2025 WL 5291542, at *3 (granting motion to dismiss FAC "without prejudice to replead"); *Palisade*, 2025 WL 5285581, at *4 (granting plaintiff leave to file second amended complaint). At minimum, Cypresswood should be permitted to re-plead its pre-suit indirect and willful infringement claims after fact discovery, as information concerning Google's internal patent prosecution practices and its investigation of the Pivot3 References and Asserted Patents are within Google's possession. FAC ¶ 33. *See, e.g.*, *RFCyber Corp. v. Apple Inc.*, No. 6:21-CV-00916-ADA, 2022 WL 22891200, at *3 (W.D. Tex. Sept. 12, 2022) (dismissing pre-suit indirect and willful infringement claims without prejudice to re-plead them after discovery); *Network Sys. Techs., LLC v. SK hynix Inc.*, No. 1:25-CV-1647-ADA, 2026 WL 1920396, at *3 (W.D. Tex. July 2, 2026) (same).

## V. CONCLUSION

For the foregoing reasons, Google's motion to dismiss should be denied. Alternatively, Cypresswood requests that any dismissal be without prejudice and with leave to amend.

Dated: November 16, 2026

Respectfully submitted,

/s/ *Benjamin T. Wang*
Benjamin T. Wang
bwang@raklaw.com
Marc A. Fenster
mfenster@raklaw.com
Paul Kroeger

pkroeger@raklaw.com
Neil Rubin
nrubin@raklaw.com
Joshua Scheufler
jscheufler@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
**RUSS AUGUST & KABAT**
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474

Andrea L. Fair
State Bar No. 24078488
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
E-mail: andrea@millerfairhenry.com

*Attorneys for Plaintiff*
*Cypresswood Solutions LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2026, all counsel of record who have appeared in this case were served with a copy of the foregoing via the Court's CM/ECF system.

/s/ *Benjamin T. Wang*